STATE OF MISSOURI at the relation of ILLINOIS GREYHOUND LINES, INC., Appellant, v. PUBLIC SERVICE COMMISSION.—108 S. W. (2d) 116.

Division Two, August 26, 1937.

*Ivan Bowen, June R. Rose* and *Clarence M. Barksdale* for appellant.

*James P. Boyd,* General Counsel, and *Daniel C. Rogers,* Assistant General Counsel, for Public Service Commission.

TIPTON, J.—This case comes to the writer on reassignment. On October 17, 1933, the respondent, the Public Service Commission of Missouri, issued an order to show cause why the busses, operated by the appellant, Illinois Greyhound Lines, Inc., in this State were lawful under the Bus and Truck Act of 1931 in the absence of an interstate permit, which permits are issued by the respondent. After holding a hearing, the respondent made an order requiring the appellant to cease its operations within this State until such time as it might obtain a permit from the respondent. On certiorari, the Circuit Court of Cole County entered a judgment affirming the order of the respondent on July 11, 1934. From that judgment the appellant has duly appealed to this court.

The cause was tried before the respondent upon an agreed statement of facts. These facts disclose that the appellant is a foreign corporation; that the appellant is engaged in the operation of passenger service by motor-propelled vehicles from Chicago, Illinois, through the State of Illinois and into the city of St. Louis; that its operations in this State are solely and exclusively in interstate commerce, and are solely and exclusively confined to the corporate limits of the city of St. Louis; that the entire route followed by the appellant is over the city streets of the downtown area of the city of St. Louis, and that its entire route over such streets comprises 3.18 miles; that two motorbus carriers, namely, People's Motor Bus Company and St. Louis Public Service Company, both corporations, have been operating for a number of years over the streets of the city of St. Louis and St. Louis County, adjacent thereto, as intracity and intracounty motorbus carriers doing exclusively an intrastate business in this State; and that Article VIII of Chapter 33 of the Laws of Missouri, enacted by the General Assembly on May 6, 1931, commonly known as the Missouri Bus and Truck Act, is the only State law applicable to this proceeding, and it is admitted that the People's Motor Bus Company and the St. Louis Public Service Company are exempt from the provisions of this act.

In appellant's return to the order to show cause, it is contended that appellant is not under the jurisdiction of the respondent on account of subsections (b) and (e) of Section 5264 of Article VIII, Chapter 33. Appellant also contends that if respondent does have jurisdiction of the bus operations of the appellant under this chapter, then under Section 5272 of this chapter "it will be required to pay a large tax to enter the State of Missouri and operate exclusively within the City of St. Louis, Missouri, whereas said other carriers operating within the City of St. Louis and its suburban territory

would be and are now exempt from any such tax, by the provisions of said subsections (b) and (e) referred to herein; that such tax imposed upon this company would, therefore, be an unreasonable and discriminatory tax on this company and would constitute a burden upon and interference with interstate commerce in violation of Section 8 of Article 1 of the Constitution of the United States of America, and would deny to this company the equal protection of the laws in violation of Section 1 of the Fourteenth Amendment of the Constitution of the United States, in violation of Section 30 of Article 2 of the Constitution of the State of Missouri, in that said tax would bear no reasonable relation to the use made of the highways in the City of St. Louis, Missouri, by this carrier, and for the further reason that the other carriers referred to herein, operating many more busses in the said City of St. Louis, and making continuous use of the streets of the City of St. Louis to a far greater extent than this company, are exempt from the payment of any tax under the provisions of such act, whereas this carrier, operating exclusively in interstate commerce over the city streets of the City of St. Louis, Missouri, in a negligible degree by comparison with said other carriers, would be compelled to pay a large tax on each of its busses so operated, if the provisions of the said act should be enforced against it.''

It is the appellant's contention that the express provisions of the Bus and Truck Act exempt it, by Section 5264, in its operations of its busses in this State from the applicability of the act. The pertinent parts of that section are as follows:

''(a) The term 'motor vehicle,' when used in this act, means any automobile, automobile truck, motor bus, truck, bus, or any other self-propelled vehicle not operated or driven upon fixed rails or tracks.

''(b) The term 'motor carrier,' when used in this act, means any person, firm, partnership, association, joint-stock company corporation, lessee, trustee, or receiver appointed by any court whatsoever, operating any motor vehicle with or without trailer or trailers attached, upon any public highway for the transportation of persons or property or both or of providing or furnishing such transportation service, for hire as a common carrier. *Provided, however,* this act shall not be so construed as to apply to motor vehicles used in the transportation of passengers or property for hire, operating over and along regular routes within any municipal corporation or a municipal corporation and the suburban territory adjacent thereto, forming a part of transportation system within such municipal corporation or such municipal corporation and adjacent suburban territory, where the major part of such system is within the limits of such municipal corporation. . . .

''(e) The term 'suburban territory,' when used in this act, means that territory extending one mile beyond the corporate limits of any

municipality in this state and one mile additional for each 50,000 population or portion thereof. Provided that when more than one municipality is contained within the limits of any such territory so described, motor carriers operating in and out of any such municipalities within said territory shall be permitted to operate anywhere within the limits of the larger territory so described.''

A mere casual reading of the above-quoted subsection will disclose that the appellant's operations of its busses do not come within the exemption named. The proviso contained in subsection (b) exempts operations of those carriers operating solely within municipal corporations in this State, or by carriers operating within municipal corporations and adjacent suburban territory when the major portion of the more extended operation is within the municipality.

In other words, the Legislature has seen fit to leave the regulations of motor busses which operate within a municipal corporation and its suburban territory for the benefit of the inhabitants of that municipality to the municipality.

Appellant's operations do not fall within either classification since its operations are not limited to the city of St. Louis, or the city of St. Louis and its suburban territory, but are concededly from Chicago, Illinois, to St. Louis, Missouri.

Appellant contends that we cannot look beyond the State line in determining whether its operations are exempt under this proviso, and since all of its operations are within the State, being within the municipality of St. Louis, it is clearly exempt under this proviso of the statute. Appellant's position is not sound. The statute divides bus operations into three classes: first, intrastate; second, intramunicipal or municipal and suburban; and third, interstate. Distinctly different duties are enjoined upon the respondent in the regulation of busses falling within each of the classes. Therefore, the respondent must, of necessity, inquire and determine whether a given carrier's operations extend without the State. If so, that carrier is classified as interstate, even though its operations in this State are solely in a municipality. The appellant's operations of its busses, being interstate, are therefore unlawful unless licensed by the respondent in accordance with the provisions of this act, unless the act is unconstitutional, which point we will discuss later.

The appellant contends that if its operations of its busses in this State are within the provisions of the act, then the act is unconstitutional and unenforceable against it for the reason that the tax imposed by the act would be an undue burden upon interstate commerce in violation of Section 8 of Article I of the Constitution of the United States.

''The highways belong to the State. It may make provision appropriate for securing the safety and convenience of the public in the use of them. [Kane v. New Jersey, 242 U. S. 160.] It may

impose fees with a view both to raising funds to defray the cost of supervision and maintenance and to obtaining compensation for the use of the road facilities provided. [Hendrick v. Maryland, 235 U. S. 610. See, also, Pierce Oil Corporation v. Hopkins, 264 U. S. 137.] With the increase in number and size of the vehicles used upon a highway, both the danger and the wear and tear grow. To exclude unnecessary vehicles—particularly the large ones commonly used by carriers for hire—promotes both safety and economy. State regulation of that character is valid even as applied to interstate commerce, in the absence of legislation by Congress which deals specifically with the subject." [Buck v. Kuykendall, 267 U. S. 307, l. c. 314.]

█ The case was tried in the court below before the Federal Motor Carrier Act of 1935 became effective, therefore, we will not undertake to decide if that act has in any way modified the Missouri Bus and Truck Act of 1931.

Is the tax imposed upon the appellant (an interstate carrier), by Section 5272 of the Laws of 1931 for the use of the highways in this State a reasonable charge and a fair contribution to the expense of construction and maintenance of such highways and of regulating the traffic thereon? If so, then the tax is valid, even if it is a burden on interstate commerce. [Kane v. New Jersey, 242 U. S. 160; Clark v. Poor, 274 U. S. 554; Prouty v. Coyne, 55 Fed. (2d) 289.]

The pertinent parts of Section 5272, supra, are as follows:

"(a) . . . *Provided,* that where a motor carrier is operating within this and an adjoining state and the total mileage of said route in Missouri is ten miles or less, the license fee shall be one-third of the license fee hereinafter set out. *Provided further,* that where a motor carrier is operating a route in this state, the total mileage of which is not greater than twenty miles, the license fee shall be one-half of the license fee hereinafter set out. In case of emergency or usual temporary demand for transportation, the license fee or additional motor vehicle for limited periods shall be fixed by the commission in such reasonable amount as may be prescribed by general or temporary order. The commission, upon the issuance of a license for any vehicle, as defined in this act, shall notify the state treasurer who shall receive the license fee for such vehicle; and the commission shall also notify the state treasurer of the number of lineal miles of route used by the owner of that vehicle and the number of miles in which it operates on state roads, and the number of miles it operates on county roads and the number of miles it operates on city roads not maintained by the state highway commission, and the state treasurer shall distribute and credit to the state highway commission and to the proper county or city in the proportion that the number of lineal miles of route used by the licensed motor vehicle in each

case bears to the number of lineal miles of route over which such carrier operates and the said funds so derived from said license shall be used for the maintenance and repair of the highways and streets over which said carrier operates.

"(b) For each motor vehicle operating under a certificate of convenience and necessity or interstate permit as a passenger carrying vehicle, the sum of ten dollars per passenger seat."

The distance the appellant uses the highways of this State is 3.18 miles. As the appellant is an interstate carrier, its tax for the use of the highways is one-third of the amount provided for in subsection (b) of this section, or $3.33 per passenger seat, while for an intrastate carrier using the highway the same number of miles the tax per passenger seat is $5. Evidently the Legislature realized that most interstate carriers would not make as many trips per day as intrastate carriers and, therefore, based the tax upon the use of the highway. Both intrastate and interstate busses using the highways ten miles or less can make as many round trips per day as the operator sees fit on the same tax. The mere fact that a carrier makes only one round trip a day is not proof that the tax is not based upon the use of the highway.

In the case of Aero Transit Co. v. Georgia Commission, 295 U. S. 285, 1. c. 289, the Supreme Court of the United States, speaking through Mr. Justice CARDOZO, said:

"The appellant urges the objection that its use of roads in Georgia is less than that by other carriers engaged in local business, yet they pay the same charge. The fee is not for the mileage covered by a vehicle. There would be administrative difficulties in collecting on that basis. The fee is for the privilege of a use as extensive as the carrier wills that it shall be. There is nothing unreasonable or oppressive in a burden so imposed. [Cf. Clark v. Poor, supra; Hicklin v. Coney, supra.] One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may."

So we cannot say that because the busses operated by the appellant do not make as many round trips a day over the highways of this State as some other interstate carrier or some intrastate carrier, such as the People's Motor Bus Company or the St. Louis Public Service Company, the tax the appellant should pay does not bear a reasonable relation to the use of the streets of the city of St. Louis.

The tax is laid as compensation for the use of the highways of this State and not for the privilege of doing business. Section 5272, supra, requires that the money derived from the tax "shall be used for the maintenance and repair of the highways and streets over which said carriers operate." Note the language of this section: "The commission, upon the issuance of a license for any vehicle, as defined by this act, shall notify the state treasurer who shall receive

the license fee for such vehicle; and the commission shall also notify the state treasurer of the number of lineal miles of route used by the owner of that vehicle and the number of miles in which it operates on state roads, the number of miles it operates on county roads and the number of miles it operates on city roads not maintained by the state highway commission, and the state treasurer shall distribute and credit to the state highway commission and to the proper county or city in the proportion that the number of lineal miles of route used by the licensed motor vehicle in each case bears to the number of lineal miles of route over which such carrier operates and *the said funds so derived from said license shall be used for the maintenance and repair of the highways and streets over which said carrier operates.*"   (Italics ours.)

The tax that this section imposes upon the appellant is to be used for the maintenance and repairs of the streets of St. Louis over which it operates.   Clearly, the tax sought to be imposed upon the appellant does bear a reasonable relation to its use of the streets of the city of St. Louis.   All the money the appellant paid as taxes would be used to maintain and repair the streets it uses in this State.

We think the case at bar is easily distinguished from the case of Interstate Transit, Inc., v. Lindsey, 283 U. S. 183.   In that case the court held that the tax was for the privilege of doing business and not as compensation for the use of the highways.   In making the test, the Supreme Court of the United States used the following language:

"As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic.   This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, Interstate Busses Corp. v. Blodgett, 276 U. S. 245, or *by the express allocation of the proceeds of the tax to highway purposes,* as in Clark v. Poor, supra, or otherwise.   *Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory.* [Hendrick v. Maryland, 235 U. S. 610, 612;   Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 250-252.   Compare Interstate Busses Corp. v. Holyoke Street Ry., 273 U. S. 45, 51.]   But the mere fact that the tax falls upon one who uses the highway is not enough to give it presumptive validity."   (Italics ours.)

In the case at bar, the tax sought to be imposed is expressly allocated for highway purposes.

An interstate permit is granted by the Public Service Commission of this State upon petition of the bus owner and is not withheld until the commission can determine if public convenience and neces-

sity will be promoted by such operation. We therefore hold that the Bus and Truck Act of 1931 does not violate the interstate commerce clause of our Federal Constitution.

■ Nor do we think this act denies the appellant equal protection of the law in violation of the Fourteenth Amendment of the Federal Constitution, or Article II, Section 30 of our State Constitution, because it is admitted the People's Motor Bus Company and the St. Louis Public Service Company are exempt from the provisions of the act.

These two companies operate a bus system over the streets of the city of St. Louis and its suburban territory in this State. Their business is primarily to transport the inhabitants from their residences to the business section of the city. The regulation of such companies is given to the city of St. Louis.

·''The equal protection clause, like the due process of law clause, is not susceptible of exact delimitation. No definite rule in respect of either, which automatically will solve the question in specific instances, can be formulated. Certain general principles, however, have been established, in the light of which the cases as they arise are to be considered. In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, Kentucky Railroad Tax Cases, 115 U. S. 321, 337; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 293, and that it applies to the exercise of all the powers of the State which can affect the individual or his property, including the power of taxation. [County of Santa Clara v. Southern Pac. Railroad Co., 18 Fed. 385, 388-399; The Railroad Tax Cases, 13 Fed. 722, 733.] It does not, however, forbid classification; and the power of the State to classify for purposes of taxation is of wide range and flexibility, provided always that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' [Royster Guano Co. v. Virginia, 253 U. S. 412, 415; Air-way Corp. v. Day, 266 U. S. 71, 85; Schlesinger v. Wisconsin, 270 U. S. 230, 240.] That is to say, *mere* difference is not enough; the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' [Gulf, Colorado & Santa Fe Ry. v. Ellis, 165 U. S. 150, 155.]'' [Louisville Gas Co. v. Coleman, 277 U. S. 32, 1. c. 37.]

The Legislature saw fit to allow the cities of this State to regulate their transportation systems, while the State, through its Public Service Commission, regulates interstate carriers, even though they may operate solely in some city of this State. The two classifications

cannot be said to be unreasonable and arbitrary. It is best that cities of this State be left to deal with their own local problems since they probably know more about their local transportation problems than some commission located in a different city.

In the case of Continental Baking Co. v. Woodring, 55 Fed. (2d) 347, the court held that a statute of the State of Kansas did not violate the equal protection clause of the Constitution which exempted "motor carriers who shall operate wholly within any city or village of this state, or private motor carriers who operate within a radius of twenty-five miles beyond the corporate limits of such city, or any village." The court in that case said:

"The bill alleges that one of the nonresident corporations maintains bakeries in several cities of the state. Connected with those bakeries are delivery trucks. Such trucks may be said to be domiciled in that city. Such trucks may operate in and about that city, within a radius of 25 miles, exempt from the tax. Nor is it necessary that a carrier should have a bakery in the city. We are of the opinion that, if a bakery were operated in Kansas City, Mo., and domiciled trucks in the city of Topeka, for delivery in Topeka and environs, the bread could be hauled from Kansas City, Mo., to Topeka, by trucks (such trucks paying the tax), but that it could then be turned over to the domiciled trucks, which could deliver their bread in Topeka and within the 25-mile radius, exempt from the tax. . . . It is our duty to construe the law so as to make it constitutional if it is fairly susceptible of such a construction. So construed, we believe the exemption not to be so arbitrary as to trespass upon the constitutional limitations."

This case was affirmed by the Supreme Court of the United States in an opinion by Mr. Justice HUGHES, 286 U. S. 352.

In the case at bar, motor carriers operating along regular routes within a municipal corporation, or a municipal corporation and the suburban territory adjacent thereto, and forming a transportation system to such municipality, are exempt. On principal, we are unable to see any real distinction between the Missouri statute and the Kansas statute, and therefore rule this contention against the appellant.

The appellant in its brief has sought to show that there are other motor carriers that are exempt, and on this account it is denied equal protection of law. No such questions were raised in its pleading and we will therefore not discuss them.

It follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.