**RUAN TRANSPORT CORPORATION, a Corporation, and Orscheln Bros. Truck Lines, Inc., a Corporation, Plaintiffs-Respondents,**

v.

**MISSOURI HIGHWAY RECIPROCITY COMMISSION et al., Defendants-Appellants.**

Nos. 49615, 49616.

Supreme Court of Missouri,

En Banc.

July 8, 1963.

Thomas F. Eagleton, Atty. Gen., James J. Murphy, Asst. Atty. Gen., Fred L. Howard, of counsel, Jefferson City, for appellants.

Hendren & Andrae, by Charles H. Howard and John E. Burruss, Jr., Jefferson City, for respondents.

Thomas D. Graham, Robert L. Hawkins, Jr., Graham & Hawkins, Jefferson City, for Kaw Transp. Co. and Blue Valley Transfer Co., amici curiae.

HYDE, Judge.

These are consolidated cases for declaratory judgment to determine meaning and effect of Sec. 301.277 with injunction asked against enforcement of defendants' interpretation. (Statutory references are to RSMo and V.A.M.S.) The Court made the construction and declaration sought by plaintiffs and enjoined defendants who have appealed.

Sec. 301.277 is a part of the Act of 1958 (Laws 1958, p. 176, now Secs. 301.271–301.-279) creating the Missouri Highway Reciprocity Commission, with authority to make agreements with other states for licensing of fleets of commercial motor vehicles on an apportionment basis according to miles traveled in each state. Under this authority, the Commission did sign for Missouri a Vehicle Registration Proration and Reciprocity Agreement (referred to as the "Uniform Compact") with 13 other states, north and west of this state; and a somewhat similar separate agreement was made with Illinois. Plaintiffs have fleets based and registered in Missouri; and the issue herein is whether plaintiffs have the right to use, for any trip in intrastate commerce in Missouri, vehicles of their fleets, so based and registered, without payment of the full Missouri registration fee. Defendants are members or officers of the Reciprocity Commission.

■ Defendants' contention is that vehicles of a fleet registered in Missouri under the "proration of registration" provisions of the Uniform Compact may only be operated on interstate trips to other states, or on combined interstate and intrastate trips (which they say is carrying freight from one point in this state to another while on an interstate trip), but that any fleet vehicle used for intrastate trips must pay the full Missouri license fee. In short, if a fleet vehicle makes one intrastate trip during the year, the full Missouri registration fee of $800 must be paid for it even though the fees of other states, in which it had traveled, also would have to be paid on the basis of miles traveled in each other state.

Plaintiffs contend that the owner of a fleet based and registered in Missouri under the "proration of registration" provision of the Uniform Compact is entitled to operate fleet vehicles both on interstate trips to other states and on intrastate trips in this state and pay for its registration on the basis of the total number of miles traveled. (The applicable percentage for determining the license fee per unit in each state may be found by dividing the number of miles traveled in that state by the total number of miles traveled in all states.)

During the years 1960 and 1961, plaintiffs were permitted to operate their fleet vehicles both interstate and intrastate on an apportionment basis. The fees were apportioned among the states on the basis of the number of miles the fleet vehicles traveled in the various states. During the year 1961, the Commission ruled that beginning on January 1, 1962, a full license fee of $800 should be paid to the State of Missouri on any vehicle whether a unit of a fleet or not if the vehicle were to be used even for a single intrastate trip. A portion of the notice or memorandum sent by the Commission to all prorate carriers was as follows: "Missouri prorate licenses (whether base plate or decal) authorize operation only in interstate commerce or combined interstate and intrastate commerce. They do not authorize an operation which is solely intrastate. To determine whether a vehicle is properly licensed we consider the movement being made at the time in question. We do not consider how the vehicle may have been operated yesterday or how it may be operated tomorrow. Even though a vehicle may be operated in

interstate commerce 90% of the time (and for such operation could properly be prorated), if it makes a trip which is solely intrastate it must have a full fee Missouri license to legally make such a wholly intrastate trip." ("Decal" refers to the identification given prorate fleet vehicles in contracting states other than their base state.)

Sec. 301.273 established the Commission and with Sec. 301.275 stated some of its duties and powers. Sec. 301.277 gives it authority, by Subsection 1(1), to exempt vehicles licensed in other states from Missouri registration laws to the extent equivalent exemptions are extended to vehicles licensed in Missouri. This is true reciprocity for which Sec. 301.271 also makes provision unless there are agreements otherwise by the Commission. Subsection 1(2) authorizes the Commission to make agreements, with other states, such as the Uniform Compact, for "licensing of fleets of motor vehicles and trailers or combinations thereof operated in interstate or combined interstate and intrastate commerce * * * on an apportionment basis commensurate with and determined by the miles traveled on and the use made of said state's highways." Subsection 1(3) authorizes such agreements when vehicles are not licensed in the state of the owner's residence but are based in and operated from a place of business in another state. The controversy in this case mainly is over the construction and effect of paragraph 3 of Sec. 301.277 which is as follows: "3. Notwithstanding any other provision of law, no reciprocity shall be granted under any statute or agreement for the operation of any commercial motor vehicle within the state of Missouri solely in intrastate commerce, but all vehicles so engaged must be duly registered and licensed in the state of Missouri."

Missouri executed the Uniform Compact November 9, 1959, with certain restrictions, No. 3 of which is as follows: "Commercial motor vehicles transporting persons or property in interstate commerce and/or combined interstate commerce and intrastate commerce are subject to this agreement. Commercial motor vehicles transporting persons or property solely in intrastate commerce must be duly registered and licensed in the State of Missouri." This was considered to be in compliance with and required by Sec. 301.277, subd. 3. Defendants' contentions are that Sec. 301.-277, subd. 3 prohibits operation of commercial motor vehicles in movements within this state solely in intrastate commerce on the basis of a prorate registration; that the prohibition contained in Sec. 301.277, subd. 3 against granting reciprocity extends to all types of reciprocity, claiming the registration based on proration is a type of reciprocity; that Sec. 301.277, subd. 3 prohibits defendants from entering into an agreement providing that operations solely in intrastate commerce may be conducted on a prorate registration; and that the Uniform Compact and the Missouri Appendix thereto do not require that plaintiffs' vehicles be permitted to operate in Missouri in intrastate commerce.

Certainly the purpose of the 1958 Act was to authorize proration compacts such as the Uniform Compact, which was in existence and operation before the 1958 Act was adopted. Prior to that only straight reciprocity was authorized in this state so that only residents of other states, permitting Missouri residents to operate their vehicles therein without payment of license fees, were allowed the same privileges in Missouri. This straight reciprocity did not cover modern motor transportation needs because owners needed to base motor fleets in states other than that of their residence or incorporation. Nevertheless, the 1958 Act recognized and retained such reciprocity by authorizing the Commission to make agreements therefor (301.277, subd. 1(1)) and to provide for it in the absence of agreements (301.271). However, such reciprocity is applicable to individual vehicles, while the fleet proration registration is a new and different concept. The Uniform Compact treats "proration of registration" and "reciprocity" as separate and distinct concepts in its Statement of Purposes and

Principles, Sec. 1, Art. 1, and in "Definitions", Art. 2, including the following:

"Sec. 17. *Registration.* Registration shall mean the registration of a vehicle and the payment of annual fees and taxes as set forth opposite the name of each contracting State in the Appendix hereto.

"Sec. 18. *Proration of Registration.* Proration of registration shall mean registration of fleets of commercial vehicles in accordance with Article 4 of this agreement.

"Sec. 19. *Reciprocity.* Reciprocity shall mean that each contracting State, to the extent provided in this agreement, exempts a vehicle from registration and the registration fees set forth in Section 17 and the Appendix."

The compact also has separate articles on "proration of registration" (Art. 4) and on "reciprocity" (Art. 5). Sec. 72, Art. 5, provides that the reciprocity granted "shall not apply to a vehicle which is entitled to be registered or identified as part of a prorated fleet." Sec. 73 thereof provides: "The reciprocity granted pursuant to this article shall permit the interstate operation of a commercial vehicle and intrastate operation which is incidental to a trip of such vehicle involving interstate operation."

As to "proration of registration" the compact contains the following provisions:

"Sec. 54. *Extent of Privilege.* Upon the registration of a fleet in a contracting State pursuant to this article, each vehicle in the fleet may be operated in both interstate and intrastate operations in such State (except as provided in Section 34).

"Sec. 34. *Statutory Vehicle Regulations.* This agreement shall not authorize the operation of a vehicle in any contracting State contrary to the laws or regulations thereof, except those pertaining to registration and payment of fees; and with respect to such laws or regulations, only to the extent provided in this agreement."

Defendants say in their brief concerning Sec. 301.277, subd. 3: "The prohibition against the granting of reciprocity for an operation solely in intrastate commerce must also prohibit a solely intrastate operation on a prorate registration." However, this prohibition is not against every operation solely in intrastate commerce. Instead, the prohibition of Sec. 301.277, subd. 3 is *against granting reciprocity* "for the operation of any commercial motor vehicle within the state of Missouri solely in intrastate commerce." This is in harmony with Sec. 73 of the compact, supra; and it is still necessary to have straight reciprocity with states that are not parties to the Uniform Compact and also for vehicles of contracting states that are not part of a prorate registered fleet. The authority of Sec. 301.277, subd. 1(2) is for licensing on an apportionment basis "fleets of motor vehicles and trailers or combinations thereof." The Uniform Compact provides: "Sec. 16. *Fleet.* As to each contracting State, fleet shall include only those commercial vehicles which actually travel a portion of their total miles in such State. A fleet must include three (3) or more commercial vehicles, at least two (2) of which are motor vehicles." Our conclusion is that both our statutes and the Uniform Compact treat "reciprocity" and "proration of registration" as separate and distinct concepts. Thus it seems reasonable to construe Sec. 301.277, subd. 3 as not applicable to licensing of vehicles of fleets that qualify for registration as fleets under the proration of registration provisions of the compact.

■ We do not overlook the provisions of Sec. 301.277, subd. 1(2) that agreements "may, under such terms, conditions and restrictions as the commission deems proper, provide that owners and operators of motor vehicles and trailers operated in interstate or combined interstate and intrastate commerce in Missouri shall be required to pay registration and other fees on an apportionment basis." However, our view is that defendants have construed this authority too narrowly in considering that operation of vehicles in combined interstate and intrastate commerce

means only a trip in interstate commerce during which some freight is picked up at one point in Missouri and delivered at another point in Missouri. The compact (Sec. 73) describes such a trip as an "intrastate operation which is incidental to a trip of such vehicle involving interstate operation"; and permits it under its reciprocity provisions. However, under fleet proration registration, it is plainly stated (Sec. 54) that "each vehicle in the fleet may be operated in both interstate and intrastate operations in such state." (We think this means the base state.) This is subject to the restriction made by Sec. 34 which we believe is intended to apply to the laws and regulations of contracting states which are applicable to all vehicles (no doubt including size, weight, speed, route permits, etc.). Therefore, we construe the statutory reference, which begins by referring to "fleets of motor vehicles * * * operated interstate or combined interstate and intrastate commerce", to mean more than a single trip by one vehicle for both purposes on the same trip, but instead to have reference to the operations of the fleet vehicles in both kinds of operations in various trips at different times. The statute does not mention trips (as does reciprocity Sec. 73 of the compact) but instead refers to fleets of vehicles operated in combined interstate and intrastate commerce and to "owners" of motor vehicles operated in combined interstate and intrastate commerce. Therefore, our view is that fleet vehicles operated in interstate commerce on one trip and in intrastate commerce on the next trip are operated in combined interstate and intrastate commerce. Certainly Sec. 54 of the compact contemplates such operations, specifically stating that privilege.

This does not mean that vehicles of fleets based and registered in other contracting states may be operated in intrastate commerce in this state and all other contracting states. The compact provisions for registration of a fleet in its base state and in other contracting states are different. Sec. 56 provides for license plates to be issued by the base state for each vehicle of the fleet and for other contracting states to issue a special identification, which the parties call a decal. While privileges of operation on a decal are not directly involved in this case, the parties argue about it and evidence was received concerning it. We mention it to make it plain that we are not deciding that issue.

We do decide that Sec. 301.277, subd. 3 has no application to vehicles of fleets based in Missouri and registered under the proration of registration provisions of the Uniform Compact. The more miles such fleet vehicles travel in Missouri, whether on interstate or intrastate operations, the more of the annual license fee Missouri gets. Thus license revenue for this state is in proportion to Missouri highway use of all fleet vehicles based in this state, and also from such use by fleet vehicles of other compact states, while under straight reciprocity this state gets nothing from vehicles licensed in other states. It was the purpose of the Uniform Compact to provide a better system than straight reciprocity, with fairer distribution of fees both as to owners and the states, and we believe our construction herein made is in accordance with its purpose. We further hold that the provisions of restriction 3, of the Missouri Appendix to the compact, state the principle of Sec. 301.277, subd. 3 relating to straight reciprocity. Therefore our construction is that it does not prohibit vehicles of fleets based in this state and registered under the proration of registration provisions of the compact from operating in both interstate and intrastate commerce; and that its prohibition against "commercial motor vehicles transporting persons or property solely in intrastate commerce" does not apply to the operations of such fleet vehicles so used both in interstate and intrastate commerce.

The judgment and decree of the trial court is affirmed.

All concur except EAGER, C. J., not sitting.