CAMPBELL SIXTY–SIX EXPRESS, INC.,
a Corporation, Respondent,

v.

John M. DALTON, Thomas F. Eagleton, Tyre W. Burton, M. E. Morris, Hugh Waggoner, and J. J. Corbett, Members of the Missouri Highway Reciprocity Commission, and Fred L. Howard, Secretary of said Commission, Appellants.

No. 50179.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied May 11, 1964.

Thomas F. Eagleton, Atty. Gen., James J. Murphy, Asst. Atty. Gen., Fred L. Howard, Jefferson City, of counsel, for appellants.

W. C. Dannevik, Jr., Turner White, of White, Dickey & Skelton, Springfield, for respondent.

HYDE, Presiding Judge.

Action for declaratory judgment and injunction in two counts. Count I sought determination of rights under fleet proration registration not now in dispute, the decree being in accord with our decision in Ruan Transportation Corp. v. Missouri Highway Reciprocity Commission, Mo., 369 S.W.2d 220. Count II sought determination of rights under "Multi-State Reciprocal Agreement Governing the Operation of Interstate Vehicles" between Missouri, Tennessee and Mississippi which the Court declared favorably to plaintiff and the Commission has appealed from that decision.

The only issues on this appeal are on Count II and are whether plaintiff's vehicles based in Tennessee, bearing Tennessee license tags, may on interstate trips pick up freight at one point in Missouri and deliver it to another point in Missouri; and whether its tractors, so based and bearing Tennessee license tags, may haul a trailer from one point in Missouri to another point in Missouri (Kansas City to Springfield) and then haul another trailer (Springfield to Memphis) for the rest of the tractor's trip. Sometimes the trailer and driver which have originated at Kansas City are both changed in Springfield although the tractor will continue on to Memphis, Tennessee, while the driver operates on a "turn-around" basis. Drivers may start at each end of the Kansas City-Memphis line, meeting at Springfield, exchanging tractors, and each driver then returning to his respective origin following the exchange.

Plaintiff first contends defendants have preserved nothing for appellate review because their motions for new trial and to amend judgment were not timely filed, citing Woods v. Cantrell, 356 Mo. 194, 201 S.W.2d 311, and Lloyd v. Garren, Mo.Sup., 366 S.W.2d 341. Of course, defendant could raise "the sufficiency of the evidence to support the judgment" without any motion for new trial, Rule 73.01(d), V.A.M.R., Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 1167, 200 S.W.2d

55, 63, which would certainly be applicable to a declaratory judgment case. However, what plaintiff really means is that defendants' appeal should be dismissed, as was done in the Woods case, because not taken in time. This would be required, if a timely motion for new trial was not filed, because the notice of appeal was not filed until May 16, 1963, judgment having been entered in January 1963. Thus a timely motion for new trial was required to postpone the finality of the judgment beyond 30 days after it was entered, as held in the Seabaugh case. (200 S.W.2d 1. c. 63.) Therefore, we must consider whether the motion for new trial was timely filed herein. Because the transcript is not clear as to this, we have had a certified copy of the record furnished by the Circuit Court of Cole County. It shows that, in an order made on January 18, 1963, the court "finds the issues for plaintiff and against defendants and orders judgment accordingly." It then shows a declaratory judgment decree, signed by the Judge dated January 24, 1963, and filed on that date, which recited the finding, on January 18, 1963, of the issues "in favor of plaintiff and against defendants" stated in the decree to be "upon Counts I and II of plaintiff's petition," with separate declarations as to the issues presented by each count.

In jury cases "the judgment shall be entered as of the day of the verdict," Rule 78.02. However, in cases tried without a jury "at or after the trial, the court shall render such judgment as it thinks right." Rule 73.01(b). Moreover, Rule 82.06 authorizes the court, in certain nonjury cases to make separate designations of determinations of claims as final or interlocutory judgments. In this case the entry of January 18th did not mention the counts on which the case was submitted or either of them and they were first mentioned in the decree dated January 24th. These two counts raised separate and distinct issues as to rights under two very different interstate agreements and the determination of these rights was not specified until they

were stated in the declaratory judgment decree of January 24th. Until then there was nothing in the record to show what rights the court meant the plaintiff should have under either agreement.

It is said: "An order merely directing or authorizing the entry of judgment in the case does not constitute a judgment; to have this effect it must be so worded as to express the final sentence of the court on the matters contained in the record and to end the case at once, without contemplating any further judicial action." 49 C.J.S. Judgments § 5, p. 30. We construe the order of January 18th as being only an order authorizing entry of a judgment. It was not "so worded as to express the final sentence of the court on the matters" submitted as was true in Woods v. Cantrell where "[t]he judgment entry in extenso, prepared by the court and spread of record on December 29, 1945, did not in the opinion of the court, dispose of any issues not disposed of by the brief entry of September 15, 1945." (201 S.W.2d 1. c. 315.) In that case, the court's first judgment entry declared a deed and bill of sale to be mortgages, and that disposed of the entire controversy. This was not true in this case because the rights under the agreements herein involved were not stated, specified or declared until the decree of January 24th was entered by signing, dating and filing it on that date. Therefore, we hold that the decree of January 24th was the final judgment herein so that defendants' motion was timely filed and their appeal timely taken.

The two agreements before the court for construction were very different, concerned entirely different situations, and were authorized by different provisions of the statute. Rights under fleet proration agreements authorized by Sec. 301.277, subd. 1(2) were the issues for determination under Count I (decided in the Ruan case); while Count II involved rights under agreements concerning vehicles, based in other states, authorized by Sec. 301.277, subd. 1(3).

Statutory references are to RSMo and V.A.M.S.

The Multistate Agreement involved, concerning vehicles based in Tennessee, states (Art. I, A) its purpose to be "to grant reciprocity subject to the exceptions noted herein * * * by the exemption from registration and payment of all fees and taxes in each other contracting jurisdiction when such vehicles *are used in any type of interstate vehicle operation* in any such other contracting jurisdiction." It recognizes (Art. III, C2) commercial vehicles as properly registered in a state "if the commercial enterprise in which such vehicle is used, has a place of business therein, and, if the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled in or from such place of business, and, the owner and/or lessee, has assigned the vehicle to such place of business."

The agreement provides (Art. IV, A): "Privately owned and operated passenger vehicles properly licensed by any one of the reciprocating jurisdictions shall be permitted to operate freely between the several jurisdictions." However, as to motor carriers of property for hire, it provides (Art. IV, E): "Motor vehicles properly licensed by any one of the reciprocating jurisdictions, including trucks, tractors, trailers, and semi-trailers, operated in the transportation of property for-hire may be operated in the several jurisdictions without limitation as to the number of trips and without the payment of any motor vehicle fees whatsoever to the reciprocating jurisdictions *when operated strictly interstate.*" This privilege is made subject to "additional conditions and requirements hereinafter listed in Articles V and VI." Article V refers to size, weight, speed, safety rules, Interstate Commerce Commission permits, etc. Art. VI refers to exceptions of each state which are made part of the agreement.

The Missouri exceptions contain the following provision: "2. Vehicles operating on the highways of Missouri without being

required to pay Missouri Motor Vehicle Registration fees on the basis of reciprocal privileges granted under this agreement are limited to such operations and movements as are *exclusively interstate* in character. Vehicles operating or moving between two points in Missouri or carrying any merchandise or passengers between two points in Missouri will be required to pay the full Missouri Motor Vehicle Registration fee required for such operation." (All emphasis ours.)

■ These provisions of the Multistate Agreement for reciprocity are obviously very different from the provisions of the Fleet Proration Agreement set out in the Ruan case (369 S.W.2d 1. c. 223) such as Sec. 54 thereof providing: "Upon the registration of a fleet in a contracting State pursuant to this article, each vehicle in the fleet may be operated in both interstate and intrastate operations in such State." The Multistate Agreement in Art. I, A, authorizes only "interstate vehicle operation." The authority to motor carriers of property for hire to operate without payment of license fees is specifically stated, in Art. IV, E, to be "when operated strictly interstate." The Missouri exceptions emphasize these provisions in limiting such vehicles to "such operations and movements as are exclusively interstate in character." This limitation is clearly and very definitely restated in the final sentence to require a Missouri license for vehicles "carrying any merchandise or passengers between two points in Missouri." We do not see how language could be plainer or more definite to show that merchandise cannot be carried between two points in Missouri regardless of whether the tractor or trailer, either or both, is on an interstate trip. The Fleet Proration Agreement, Sec. 73, designates a trip combining interstate and intrastate deliveries as an "intrastate operation which is incidental to a trip of such vehicle involving interstate operation." (Ruan case, 369 S.W.2d 1. c. 224.) Therefore, we hold that this kind of an operation, permitted by the Proration Agreement, is prohibited by

the Multistate Agreement on a foreign license, regardless of whether or not the tractor or trailer, either or both, is on an interstate trip.

Since we construe the Multistate Agreement to prohibit the kind of operations plaintiff claims to be authorized by its Tennessee license (delivery of goods, picked up at one point in this state, to another point in this state while on an interstate trip), it is not necessary to decide defendants' contention that Sec. 301.277, subd. 3 prohibits them from making such an agreement.

The decree is affirmed as to Count I and is reversed and remanded as to Count II with directions to enter a declaratory judgment on Count II in accordance with the views herein expressed and modify the order for an injunction accordingly.

All concur.

## ON MOTION FOR REHEARING OR TO TRANSFER TO COURT EN BANC

**PER CURIAM:**

■ Respondent says it does not disagree with our ruling that its operations are in violation of the Multi-State Reciprocal Agreement but argues the agreement should not be enforced because it imposes a tax upon the movement of freight instead of a tax on the movement of a vehicle, claiming Sec. 301.277 contemplates only a tax on the movement of vehicles. It also argues that the Reciprocity Commission seeks to impose a tax on the movement of freight and says it does not have the power to do so. Respondent also says the Multi-State Agreement imposes a double tax for a single privilege by requiring a vehicle to be licensed in Tennessee and then requiring it to be licensed in Missouri to move freight intrastate in Missouri. The answer to these contentions is that Missouri is not required to allow any vehicle not licensed

in Missouri to engage in any intrastate business. "Depriving an interstate motor vehicle carrier of the incidental profits which might be derived from conducting an intrastate business as an incident to the interstate business is not an interference with interstate commerce within the prohibition of the Federal Constitution." 37 Am.Jur. 560, Motor Transportation, Sec. 67. See also Sec. 72, p. 562, and Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402, in which the court held that reasonable regulations, including license fees, "are valid as to intrastate traffic, and, where there is no discrimination against the interstate commerce which may be affected, do not impose an unconstitutional burden upon that commerce." See also Annotations, 109 A.L.R. 559, 52 A.L.R. 533, 25 A.L.R. 37; 15 C.J.S. Commerce § 71 b(1) (2), p. 392, § 112 h, p. 470; 60 C.J.S. Motor Vehicles § 67, p. 246.

It is also stated in 7 Am.Jur.2d 636, Automobiles and Highway Traffic, Sec. 56: "In the absence of federal legislation covering the subject, the state may impose upon motor vehicles using the highways in interstate commerce, either exclusively or in conjunction with intrastate commerce, such license or similar fees or taxes as will reasonably defray the expense of administering regulations imposed by the state for insuring the public safety and convenience, and as will be a fair contribution to the cost of constructing and maintaining the state's highways, at least to the extent that such imposition is not discriminatory." See also State ex rel. Illinois Greyhound Lines v. Public Service Commission, 341 Mo. 190, 108 S.W.2d 116, 119, 115 A.L.R. 1097. Missouri, by signing the Multi-State Agreement, is not requiring respondent to license its vehicles in Tennessee, as respondent suggests, but instead is granting it the privilege of free use of Missouri highways, if it does so, for like privileges for Missouri licensed vehicles in Tennessee.

The motion for rehearing or to transfer to Court en Banc is overruled