STATE ex rel. Harold M. SANDHAUS et al.,
Appellants,

v.

MISSOURI PUBLIC SERVICE COM-
MISSION et al., Respondents.

No. 23994.

Kansas City Court of Appeals.

Missouri.

June 1, 1964.

Tweedie Fisher, Jefferson City, James F. Miller, Shawnee Mission, Kan., for appellants.

G. M. Rebman, G. F. Gunn, Jr., La Tourette & Rebman, St. Louis, for intervenor.

Glenn D. Evans, Thos. J. Downey, Jefferson City, for respondents.

BROADDUS, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Cole County sustaining the order of the Public Service Commission.

This case came before the Commission upon application of Orscheln Bros. Truck

Lines, Inc., Byers Transportation Company, Inc., Toedebusch Transfer, Inc., and Middlewest Freightways, Inc., requesting clarification of existing authorities held by said carriers to render service within the suburban territories of St. Louis and Kansas City, Missouri, in connection with their other authorized services. By the statutory mileage formula set forth in Section 390.020 V.A.M.S., this suburban territory or commercial zone extends 19 miles in all directions from St. Louis, Missouri, and 11 miles from Kansas City.

No additional territory or authority was sought by the applicants. The applications were opposed by five irregular route common carriers, one of whom was Harold M. Sandhaus, Kansas City, Missouri.

After due notice to all interested parties a hearing was held before the Commission on these applications by agreement of the parties and tried on a joint record. The testimony offered applies generally to the operation of the four applicants and relates to the methods used by these applicants in conducting their physical truck operations in the handling of both truckload and less than truckload freight within the suburban territory of both St. Louis, Missouri, and Kansas City, Missouri.

The Commission made extensive findings and closed its "Report" as follows:

"In conclusion, it is the opinion of the Commission that it is within the public interest and the Commission so finds that the Applicant herein has authority to serve points within the commercial zone of St. Louis and the commercial zone of Kansas City as points on its regular routes and that the City of St. Louis, together with the territory surrounding such city designated as the commercial zone is a regular route point, and that Kansas City together with the territory surrounding such city designated as the commercial zone is a regular route point, all being in connection with the

Applicant's regular route service out of St. Louis and Kansas City.

"Entertaining these views, it is, therefore,

"ORDERED: 1. That to the extent authority has been heretofore granted to Orscheln Bros. Truck Lines, Inc., holder of Certificate of Convenience and Necessity and Interstate Permit No. T-403, to serve between the suburban territories of Kansas City and St. Louis, and between said suburban territories, on the one hand, and points on its regular routes, on the other hand, said authority is hereby clarified and restated to provide that the Kansas City commercial zone and the St. Louis commercial zone are points on the regular routes of said carrier. The authority herein granted does not include the right to render motor carrier service between separate municipalities in the St. Louis commercial zone and the town of Independence, Missouri, but such right is expressly excluded. The term "commercial zone" as used herein is as defined in Section 390.020(14), RSMo 1959."

The appellants filed motions for reconsideration with the Commission, which motions were subsequently denied. They subsequently appealed to the Circuit Court of Cole County, which court, as we have stated, sustained the order of the Commission.

Appellants state their first point as follows: "Authority granted by Respondent Commission prior to 1951 authorizing a common carrier to render service to, from or between the 'suburban territory' of a municipality must designate the specific course or line of travel said carrier shall traverse when operating within the suburban territory to be a regular route."

It is undisputed that Applicants hold authority from Respondent Commission authorizing each to serve Kansas City and St. Louis over specifically designated routes.

They are also authorized to serve the "suburban territory" of Kansas City and the "suburban territory" of St. Louis. Respondent Commission, however, only designated the highways between Kansas City and St. Louis, Missouri, and did not designate the highways between the suburban territories.

In their brief appellants state their position as follows: "It should be noted that the authority granted applicants purportedly as regular route motor carriers does not specify or designate the streets, highways or roads over which their service would be performed. It is here where Appellants take issue with Respondent and say that as required by the laws of Missouri, a regular route carrier must traverse regular routes and these routes must be designated and authorized by the Respondent Commission."

■ From our investigation we have reached the conclusion that there is no requirement in the Missouri law that service in terminal collection and distribution traffic must be performed over designated and specific courses or lines of travel when within a municipality or the suburban territory thereof.

The Supreme Court of Missouri in State ex rel. and to Use Public Service Commission v. Blair, 347 Mo. 220, 146 S.W.2d 865 (1940) was asked to determine whether a municipality and its suburban territory formed a single unit and were included as a point on a regular route. In holding that suburban territory was included within the meaning of regular routes, the Court stated, loc. cit. 871, 872:

"We do not believe that it was intended that 'common carriers,' engaged exclusively in intra urban business, must operate over a definite regular route in order to claim the exemption. As we understand, the Commission has never exercised nor claimed the right to establish regular routes within municipalities for strictly intra urban transportation. It would seem that the municipality should be left to determine what streets may be used for transportation wholly within its corporate limits. True, *the Commission does have authority to establish regular routes in a municipality when the route also extends beyond the limits of the municipality and its suburban territory,* but even then, the authorities of the municipality must be consulted. That authority is given the Commission in order that the mileage of the route within the municipality may be established and the fees properly allocated, but if the route is wholly within the municipality there is no allocation to be made. The proviso above quoted, subsection (b), was included in Section 5264 as it existed prior to 1931 except that it did not then contain the words 'or property.' The former law did not apply to carriers of property and, of course, it was unnecessary to expressly except such carriers from the law in the proviso. The term 'regular route' was not defined in the former law, but it apparently meant a route usually traveled between fixed termini. In the present Act the term is defined, subsection (g), as 'that portion of the public highway over which a motor carrier usually or ordinarily operates or provides motor transportation service.'

"Thus it will be seen the requirement for fixed termini has been omitted and the definition extended to include the territory over which the carrier usually provides motor transportation service. In cities, the transportation of persons * * * is generally carried on over definite routes, while transportation service for property is usually and ordinarily provided from and to any points within the city and over any streets the use of which has not been restricted by the local authorities. *We think the term 'regular routes' as used in the proviso includes every portion of the municipality and suburban territory* over which the carrier

*usually or ordinarily provides transportation service."* (Emphasis supplied.)

As additional evidence of legislative intent that authority to serve a suburban territory or commercial zone is a part of regular route service is the fact that paragraph 16 of Section 390.020 V.A.M.S. provides that the Commission is neither authorized nor required "to fix or designate the specific course or line of travel to be used by any motor carrier within the corporate limits of any municipality served or traversed." We rule the point against appellants.

■ By their second point, appellants assert that by its order the Respondent Commission has granted Applicants authority without evidence of need thereof. Appellants' contention is based on the false premise that the authority originally issued to applicants relating to service of commercial zones was *irregular*. At no time did Respondent Commission ever consider Applicants commercial zone authority to be anything but regular route authority. It was not incumbent upon Applicants to present any evidence of need for their services. No new service was sought.

Appellants state their third point as follows: "An area the size of Kansas City extended on both sides 11 air-line miles beyond the City Limits is not a point. It is an area or a territory."

■ Paragraph 16 of Section 390.020 reads: "The term 'regular route' means a fixed, specific and determined course to be traveled by a motor carrier's vehicle rendering service to, from or between various points, localities or municipalities in this state." Relative to this paragraph the Commission said:

"The Commission interprets the law to mean that a fixed specific and determined course and regular route service refers to a course to, from or between various points, localities or municipalities within the State and that

the municipality, together with that territory extending one mile beyond the corporate limits of each municipality and one mile additional for each 50,000 population thereof is a regular route point of the Applicant. The word *'localities'* is used in this paragraph as well as the word 'points.' The word 'localities' might well be interpreted to include an area such as the city including the commercial zone since the words 'point, 'localities', 'place' and 'area' are often used similarly in transportation phraseology."

With that interpretation we agree.

■ In their remaining two points appellants continue to argue that the order of Respondent Commission was a grant of new authority. This is not true. The applicants did not request any new authority and none was granted. The order of the Commission simply points out that authorities of Applicants to serve the Commercial zones of Kansas City and St. Louis are what they have been all along—points on the regular routes of Applicants.

Appellants do not deny that St. Louis and Kansas City are points on the regular routes of intervenors. Applicants testified in great detail that the operations which they conduct within the commercial zones are identical to those performed in the two named municipalities. The purpose of this testimony was to establish that service within the commercial zones and within the cities is by its very nature related to one specific unit or point.

Of course applicants do not employ a fixed route of travel for their pick up and delivery terminal zone service within the commercial zones. Neither do they employ a fixed route of travel for their pick up and delivery terminal zone service within the city limits of Kansas City and St. Louis. The service performed within the two cities and within their commercial zones is identical and inseparable. That is one of the elements which gives rise to the conclusion

that as a matter of law the commercial zones of Kansas City and St. Louis are points on the routes of the regular route carriers.

The judgment of the Circuit Court of Cole County upholding Respondent Commission's order is affirmed. All concur.