STATE OF MISSOURI at the relation and to the use of PUBLIC SERVICE COMMISSION OF THE STATE: ROY MCKITTRICK, Attorney General; A. B. LAMBERT, SAMUEL H. LIBERMAN, OTTO F. HARTING, THOMAS F. FARRINGTON and BERNARD F. DICKMANN, Board of Police Commissioners of the City of St. Louis; JOHN H. GLASSCO, Chief of Police of the City of St. Louis; A. D. SHEPPARD, Acting Superintendent of Missouri State Highway Patrol; STATE HIGHWAY COMMISSION OF MISSOURI, and CITY OF ST. LOUIS, a Municipal Corporation, Relators, v. SAM C. BLAIR, as Judge of the Circuit Court of Cole County.—146 S. W. (2d) 865.

Court en Banc, February 1, 1941.

*James H. Linton, Daniel C. Rogers, Covell R. Hewitt, Edgar H. Wayman, Harold C. Hanke, Louis V. Stigall* and *Wilkie B. Cunningham* for relators.

222

*James T. Blair* and *Barker, Durham & Drury* for respondent.

224

*Charles A. Orr* and *Maurice Weinberger* for Team & Motor Truck Owners Assn. of Greater Kansas City, *amicus curiae*; *J. H. Tedrow* for Chamber of Commerce of Kansas City, *amicus curiae*; *M. W. Borders* for Kansas City Stock Yards Company, *amicus curiae*.

CLARK, J.—Prohibition: Relators are the Missouri Public Service Commission, the Chief of Police and Board of Police Commissioners of St. Louis, the City of St. Louis, the State Highway Commission and the Acting Superintendent of the State Highway Patrol and have sued in this court to prohibit respondent, Judge of the Circuit Court of Cole County, from proceeding further in a suit pending before him. That suit was filed in August, 1939, by fifty-eight plaintiffs who allege in their petition, among other things: that the purpose of the suit is to procure a declaratory judgment construing the Bus and Truck Act of 1931, as amended (R. S. Mo. 1929, secs. 5264-5280, inclusive; Mo. Stat. Ann., same secs. pp. 6679-6695, inclusive); that each of the plaintiffs is domiciled in St. Louis and is and for many years has been engaged in the drayage or hauling business in that city and its suburban territory, as defined by law; the major portion of such business or system of transportation being located in and carried on exclusively within the corporate limits of St. Louis; that each has a common interest in the relief sought; that the Public Service Commission until recently has, by inaction and positive rulings, construed said Act as not to apply to the character of business conducted by plaintiffs, but now, without giving them a hearing, has declared the businesses conducted by plaintiffs to be subject to the Act; that at the request of the Public Service Commission the other relators have caused numerous arrests of plaintiffs and their employees for the purpose of enforcing the penal provisions of said Act; that such arrests have and will cause irreparable injury to plaintiffs and deprive them of their business and property without due process of law, etc.; that plaintiffs have never held themselves out as common carriers and serve only such persons and firms as will make special contracts; that some of the operations of plaintiffs are carried on between St. Louis and its trade territory in the State of Illinois, and are in legal effect operations in interstate commerce; that plaintiffs are neither "motor carriers" nor "contract haulers" as defined by said Act, properly construed; that if said Act is construed to apply to the business of plaintiffs it contravenes certain sections of the State and Federal Constitutions; that plaintiffs have no adequate remedy at law. In addition to praying for a declaratory judgment, the petition asked that defendants (relators) be enjoined from arresting plaintiffs and their employees, etc.

Upon the filing of the petition the circuit court issued an injunction *pendente lite* restraining relators from arresting or causing the arrest of plaintiffs or their employees, and from interfering with the business of plaintiffs based on the premise that plaintiffs are operating in violation of said Act.

Defendants (relators) filed answer alleging: that no action for injunctive relief may be maintained under the Declaratory Judgment Act; that it would be impossible for the court to declare the rights, status and legal relations of the plaintiffs, taken collectively; that each plaintiff has an adequate remedy at law by filing application with the Public Service Commission; and that plaintiffs are not in court with clean hands. The answer also contained a counterclaim seeking to recover license fees from plaintiffs.

By agreement of counsel for both parties the circuit court appointed an attorney, Honorable Charles Seibold, as special master to hear testimony and report as to all matters of fact and law. Defendants (relators) orally objected before the special master to the introduction of any evidence and later filed in the circuit court an amended motion to dismiss. On this motion being overruled the special master, with both parties represented by counsel, proceeded to hear testimony from time to time until the filing by relators of their petition for prohibition in this court. We issued our preliminary rule in prohibition, respondent circuit judge has made return thereto setting forth the proceedings thus far had in the case, including the pleadings filed and orders made, and the effect of evidence taken in support of the allegations of the petition. Relators have filed reply admitting the facts pleaded in the return; the reply, in effect, being a motion for judgment on the pleadings.

The problem here is whether the circuit court is proceeding without, or in excess of, jurisdiction.

The Act vests in the Public Service Commission the supervision, licensing and regulation of commercial motor vehicles used on the public highways of the State, including State highways, county roads and city streets. Various terms are defined, the Commission is authorized to hold hearings, determine the matter of convenience and necessity and other questions, establish routes, issue permits, and generally to supervise and enforce all provisions of the Act with reference to length, size and safety equipment of vehicles, financial responsibility of carriers, etc. The license fees are for the maintenance of the highways and are allocated to the State, counties and municipalities according to their respective road mileage used by the carriers. Heavy penalties are prescribed for violations. Certain exemptions, not material in the instant case, are provided in Section 5265.

Section 5264, is, in part, as follows:

"(a) The term 'motor vehicle,' when used in this act, means any automobile, automobile truck, motor bus, truck, bus, or any other self-propelled vehicle not operated or driven upon fixed rails or tracks.

"(b) The term 'motor carrier,' when used in this act, means any person, firm, partnership, association, joint-stock company, corporation, lessee, trustee, or receiver appointed by any court whatso-

ever, operating any motor vehicle with or without trailer, or trailers attached, upon any public highway for the transportation of persons or property or both or of providing or furnishing such transportation service, for hire as a common carrier. *Provided, however,* this act shall not be so construed as to apply to motor vehicles used in the transportation of passengers or property for hire, operating over and along regular routes within any municipal corporation or a municipal corporation and the suburban territory adjacent thereto, forming a part of transportation system within such municipal corporation or such municipal corporation and adjacent suburban territory, where the major part of such system is within the limits of such municipal corporation.

"(c) The term 'contract hauler,' when used in this act, means any person, firm or corporation engaged, as his or its principal business, in the transportation for compensation or hire of persons and/or property for a particular person, persons, or corporation to or from a particular place or places under special or individual agreement or agreements and not operating as a common carrier and not operating exclusively within the corporate limits of any incorporated city or town, or exclusively within the corporate limits of such city or town and its suburban territory as herein defined. . . .

"(e) The term 'suburban territory,' when used in this act, means that territory extending one mile beyond the corporate limits of any municipality in this state and one mile additional for each 50,000 population or portion thereof. Provided that when more than one municipality is contained within the limits of any such territory so described, motor carriers operating in and out of any such municipalities within said territory shall be permitted to operate anywhere within the limits of the larger territory so described. . . ."

Section 5234, Revised Statutes Missouri 1929 (Mo. Stat. Ann., sec. 5234, p. 6661), provides for court review of decisions of the Public Service Commission and contains the following provision:

"No court of this state, except the circuit courts to the extent herein specified and the supreme court on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties. . . ."

The point made in the answer filed by relators in the circuit court, that the Declaratory Judgment Act does not authorize injunctive relief without a new proceeding, has not been briefed in this court and it is unnecessary for us to decide it. However, it seems clear that the petition in the circuit court makes a case for injunctive relief, without regard to the Declaratory Judgment Act, for the reasons stated in Park Transport. Co. v. State Highway Comm. et al.; 332 Mo. 592, 60 S. W. (2d) 388, to-wit: irreparable injury to the

business and property of the carriers due to frequent arrests and prosecutions under an erroneous construction of a statute and that plaintiffs have no adequate remedy. [See also: State ex rel. Chase v. Hall, 297 Mo. 594, 250 S. W. 64; State ex rel. Public Service Comm. v. Mulloy, 333 Mo. 282, 62 S. W. (2d) 730.]

Relators contend that exclusive original jurisdiction of all the subject matter included in the Public Service Commission Act is vested in the Public Service Commission; that the act removes the power of courts to enjoin the Commission or to pass upon such subject matter except in review of the proceedings of the Commission in the manner set forth in the Act. In support of this contention relators cite a number of our decisions holding that the authority of the Commission is referable to the police power of the State which power may never be abridged. We deem it unnecessary to review that line of cases. We think they correctly state the law, but are not decisive of the instant case.

Relators also cite the following cases: State ex rel. Cirese v. Ridge, 345 Mo. 1096, 138 S. W. (2d) 1012; Speas v. Kansas City, 329 Mo. 184, 44 S. W. (2d) 108; State ex inf. v. Gas Company, 254 Mo. 515, 163 S. W. 854; State ex rel. Public Service Commission v. Latshaw, 325 Mo. 909, 30 S. W. (2d) 105; Laclede Gas Co. v. Comm., 304 U. S. 398; State ex rel. Public Service Commission v. Mulloy, 333 Mo. 282, 62 S. W. (2d) 730; State ex rel. Anderson v. Witthaus, 340 Mo. 1004, 102 S. W. (2d) 99; Park Transport. Co. v. Highway Comm. et al., 332 Mo. 592, 60 S. W. (2d) 388.

The Cirese case, supra, was an original proceeding in this court to prohibit the Circuit Court of Jackson County from proceeding further in a case brought by the Kansas City Power & Light Company (a public utility) to enjoin Cirese from operating a public utility without first obtaining a certificate as required by the Public Service Commission Act. We made our writ of prohibition absolute, holding that exclusive original jurisdiction was vested in the Commission to decide the questions at issue, to-wit, whether Cirese was operating a public utility and, if so, whether the public convenience and necessity justified the issuance of a permit. Undoubtedly our ruling was correct, but a different situation confronts us in the instant case. There the plaintiff was trying to enforce the Public Service Act, not through the exclusive agency provided by the Act, to-wit, the Commission, but through the circuit court. In the instant case, the plaintiffs in the circuit court and the respondent in this court, contend that by the very terms of the Act the Commission has *no* jurisdiction, original or otherwise, over the character of business described in plaintiffs' petition.

The Speas case, supra, was a suit by resident taxpayers to enjoin the City of Kansas City from furnishing water service to persons outside the city limits: first, on the contention that the city charter

did not confer such power; second, that by furnishing water to non-residents the city was left an inadequate supply for its residents. We held that the question of adequacy of service was for the Public Service Commission to decide in the first instance.

State ex inf. v. Kansas City Gas Co., supra, was mandamus in this court to compel a public utility to furnish adequate service. We held that exclusive original jurisdiction was in the Public Service Commission.

In State ex rel. v. Latshaw, supra, we prohibited a circuit court from enjoining the Public Service Commission from acting in a proceeding to establish rates for a public utility. In Laclede Gas Co. v. Comm., supra, the United States Supreme Court dismissed an appeal from this court for the reason that no final judgment had been rendered. In that case this court had remanded to the circuit court an appeal in a rate case with directions to remand to the Public Service Commission for further proceedings.

The Mulloy case, supra, is somewhat similar to the instant case. It was an original case in this court, brought by the Public Service Commission, to prohibit the circuit court from proceeding further in a case pending before it. The circuit court had issued a temporary injunction restraining the Commission and other defendants from enforcing the provisions of the Bus and Truck Act, supra, against certain contract haulers for reasons different from those claimed in the instant case. In this court the Commission contended that the circuit court was without jurisdiction because of Sections 5233 and 5234 of the Act. The respondent contended that Section 5234 is unconstitutional, but we held that the constitutional question was not timely raised. In the course of the opinion we said that except for the provisions of said Section 5234 the respondent would have authority to pass upon the validity of the Act. In effect, we held that exclusive original jurisdiction to enforce the Act is vested in the Commission and that the temporary injunction restraining the Commission "from attempting to enforce any and all provisions of said Act" exceeded the circuit court's jurisdiction. As will be later pointed out, the terms of the injunction in that case differ materially from those in the injunction issued in the instant case.

State ex rel. Anderson v. Witthaus was also an original case in this court wherein the Commission sought to prohibit a circuit court from further proceeding in a case brought by the same plaintiff who instituted the action in the circuit court which we prohibited in the Mulloy case, supra. We held that under the admitted facts as set out in the petition filed by plaintiff in the circuit court he was a "common carrier" and amenable to the Bus and Truck Act.

Park Transport. Co. v. Highway Comm. et al., supra, was an appeal in an injunction suit to prevent the State Highway Commission, the Public Service Commission and others from interfering with

plaintiff in the operation of "over length" trucks without a special permit as required by statute. We held that the statute is constitutional; further, that jurisdiction is vested in the Highway Commission to determine, in the first instance and upon a factual investigation, whether plaintiffs' operations came within the exceptions mentioned in the statute.

We adhere to our ruling in each of the cases above discussed and again state: that the power rests in the Public Service Commission, in the first instance, to decide all matters placed within the Commission's jurisdiction by the Bus and Truck Act; that no court can enjoin the Commission *in the performance of its duties,* nor alter its decisions except in review in the manner provided in the Act; and that any decision otherwise rendered by a court would not be binding on the Commission. To illustrate: in the instant case the circuit court cannot enjoin the Commission from determining in the first instance whether any one of the plaintiffs is operating only in St. Louis and its suburban territory, or whether the major part of the system of such plaintiffs is within St. Louis. Nor can the court enjoin the relators from causing the arrest of any of the plaintiffs on a charge that the major part of his or its system is not within St. Louis or that such plaintiff is operating beyond suburban territory; and any decision by such court on such matters would not be binding on the Commission.

To illustrate further we refer to the opinion of Judge DOUGLAS in the case of State ex rel. Public Service Commission v. Padberg, 346 Mo. 1133, 145 S. W. (2d) 150. Certain motor carriers had brought suit in the circuit court to enjoin the Public Service Commission from attempting to require them to pay fees and secure permits, claiming that they were exempt from the Bus and Truck Act because they operated trucks of one and one-half tons capacity or less as rated by the manufacturers. The Act in one or more places says it does not apply to trucks of one and one-half tons capacity or less. Other provisions vest in the Commission the right to rate trucks for license purposes "on the manufacturer's rated load capacity or the actual weight carrying capacity of the vehicle, which capacity shall be determined by the Public Service Commission" at the time of issuing the permit. The plaintiffs claimed that a proper construction of the Act would exempt trucks of the capacity specified "as rated by the manufacturer." At the instance of the Commission, we prohibited the circuit court from proceeding further in the case, holding that without ambiguity the Act gives the Commission exclusive original jurisdiction to determine truck capacity by either of the methods mentioned.

That is not the same problem which we have to decide in the instant case. Here, we think the Act clearly exempts from the jurisdiction of the Commission some of the operations under consideration and is

fraught with serious ambiguity as to the rest of them. If so, it is a matter for judicial determination; that is, the motor carriers are entitled to the judgment of a court as to whether the Commission has any jurisdiction over their business. We might content ourselves with pointing out the ambiguities of the Act and leave it to the circuit court to decide its proper construction subject to the right of appeal. However, if there is enough in the record to give us a clear insight into all the problems involved, we deem it fairer to all concerned to set forth the views of this court as to the meaning of the Act. Indeed, one feature of the litigation seems to make it necessary that we do so, for we have to determine not only whether the circuit court has any jurisdiction, but also whether it has exceeded jurisdiction. The uncertain and ambiguous provisions of the Act might justify us in leaving the circuit court to construe it, but, in order to determine whether the temporary injunction is in excess of the court's jurisdiction, we have to announce our own construction.

The underlying purposes of the Act are to provide for the preservation of the highways, for the safety and welfare of those who use them, and for reasonable compensation from those who use them for commercial purposes. As the law existed prior to 1931, beside the registration fees charged for all motor vehicles, additional fees were assessed against motor vehicles used as common carriers of passengers, but not of freight. The great expansion of our State highway system and consequent enormous and continuing increase in the number of motor vehicles using the highways prompted the Governor to deliver a special message to the General Assembly in which he said:

"Today the state highways, which are the property of the people and a matter of great pride and concern to them, are being more and more crowded with buses and trucks, which by reason of their great length, width and weight, bid fair, unless restrained, to crowd off the private vehicles, to accommodate which, primarily, the highways have been constructed—The trucks are serving as a convenience to farmers and shippers generally, and the buses are a convenience to the traveling public. Their use of the highways, however, should be restricted and regulated to protect those traveling in private vehicles, and limitations should be placed on their equipment to prevent damage to the highways and to protect citizens using the highways."

In response to the Governor's message and the public demand, the General Assembly passed the Act of 1931. In the new Act many provisions of the former law are retained which do not accurately fit the provisions of the new Act. Then too, as in the case of most legislation of widespread and conflicting interest, floor and conference amendments and necessary compromises have injected seemingly inconsistent provisions into the law which raise many questions of construction.

The Act vests in the Commission original jurisdiction for the licensing and regulation of "motor carriers" and "contract haulers," as those terms are defined, but it does not vest such jurisdiction as to *all* "motor carriers" and "contract haulers." Some commercial motor vehicles are expressly exempted from the Act and thus from the jurisdiction of the Commission by the proviso in subsection (b) of Section 5264.

It is difficult to determine just what is meant by the term "regular routes" as used in the proviso. The terms "regular route" and "irregular route" are defined in subsections (g) and (h) of Section 5264, as follows:

"(g) The term 'regular route,' when used in this act, means that portion of the public highway over which a motor carrier usually or ordinarily operates or provides motor transportation service.

"(h) The term 'irregular route,' when used in this act, means that portion of the public highways over which a regular route has not been established."

However, reference to subsection (c) indicates that "contract haulers," exclusively engaged in intra urban or suburban transportation, are exempt from the Act without regard to whether they operate over regular or irregular routes. We do not believe that it was intended that "common carriers," engaged exclusively in intra urban business, must operate over a definite regular route in order to claim the exemption. As we understand, the Commission has never exercised nor claimed the right to establish regular routes within municipalities for strictly intra urban transportation. It would seem that the municipality should be left to determine what streets may be used for transportation wholly within its corporate limits. True, the Commission does have authority to establish regular routes in a municipality when the route also extends beyond the limits of the municipality and its suburban territory, but even then, the authorities of the municipality must be consulted. That authority is given the Commission in order that the mileage of the route within the municipality may be established and the fees properly allocated, but, if the route is wholly within the municipality there is no allocation to be made. The proviso above quoted (subsection (b)) was included in Section 5264 as it existed prior to 1931 except that it did not then contain the words "or property." The former law did not apply to carriers of property and, of course, it was unnecessary to expressly except such carriers from the law in the proviso. The term "regular route" was not defined in the former law, but it apparently meant a route usually traveled between fixed termini. In the present Act the term is defined (subsection (g)) as "that portion of the public highway over which a motor carrier usually or ordinarily operates *or provides motor transportation service.*" (Italics ours.)

Thus it will be seen the requirement for fixed termini has been omitted and the definition extended to include the territory over which the carrier usually provides motor transportation service. In cities, the transportation of persons (except by taxicabs which are defined and exempted by other portions of the Act) is generally carried on over definite routes, while transportation service for property is usually and ordinarily provided from and to any points within the city and over any streets the use of which has not been restricted by the local authorities. We think the term "regular routes" as used in the proviso includes every portion of the municipality and suburban territory over which the carrier usually or ordinarily provides transportation service. To hold otherwise would make the proviso almost meaningless.

The petition filed by the plaintiffs in the circuit court describes transportation operations falling within three groups: (1) wholly intra city, (2) wholly intra city and suburban territory, and (3) intra city and across the State line into Illinois; it being stated that each of the carriers is domiciled in St. Louis and that the major portion of his business or system of transportation is located in and carried on exclusively within that city.

The first two groups are clearly exempted from the Act by subsection (b), supra. As to the third group, the question is more difficult.

Section 5268 of the Act makes it unlawful for a carrier to use any of the public highways of this State in the transportation of persons or property in interstate commerce without procuring a permit from the Commission and other sections provide for license fees to be paid by such carrier.

The carriers contended in the circuit court and the respondent contends in this court: that since Section 5264 exempts carriers who have the major portion of their system in St. Louis and are engaged exclusively in intra urban, or intra urban and suburban transportation, the State is without power to levy a license fee on such carrier merely because he crosses the State line and uses the highways of Illinois; that such a construction would contravene the Federal Constitution which prevents us from levying a tax on interstate commerce.

Relators seem to contend that the Act covers *any* operation in interstate commerce and rely upon our decision in the case of State ex rel. Greyhound Lines v. Pub. Serv. Comm., 341 Mo. 190, 108 S. W. (2d) 116. In that case the Greyhound Company, a common carrier of passengers between Chicago, Illinois, and St. Louis, Missouri, claimed exemption from our Bus and Truck Act under the provisions of Section 5264, its contentions being: that its operations in Missouri were exclusively in interstate commerce and exclusively within the corporate limits of St. Louis, its total mileage in that city comprising 3.18 miles; that other companies were operating within that city and

adjacent territory as intra city and intra county carriers and were exempt from the Act; that we could not look beyond the State line in determining whether its operations were exempt, and since all its operations within Missouri were within the municipality, it was exempt under the proviso (subsection (b) of Section 5264) ; and that to impose a tax upon such operations would be unconstitutional as being unreasonable and discriminatory and as imposing an undue burden on interstate commerce. We resolved all the contentions of the carrier against it, holding: that the tax is laid as a reasonable compensation for the use of our highways, not for the privilege of doing business, and therefore not an illegal burden on interstate commerce; that the General Assembly has seen fit to allow the cities of this State to regulate their transportation systems, "while the State, through its Public Service Commission, regulates interstate carriers, even though they may operate solely in some city of this State;" that this is not an unreasonable or arbitrary classification in a constitutional sense; and that the carrier's operations are not exempted by subdivision (b) of Section 5264 because such operations are not limited to St. Louis and its suburban territory, but are from Chicago, Illinois, to St. Louis, Missouri.

The relators lay hold of some of the language used in the opinion in the Greyhound case, to the effect that the Commission regulates interstate carriers although operating solely in some city of this State, as authority for the proposition that *all* interstate operations are within the Act. The opinion does not so hold. Under the facts, the ruling was correct, because, as stated in the opinion, the carrier's operations were from Chicago across the State of Illinois and into St. Louis. That is equivalent to saying that the major part of the carrier's system was not located in a municipality of this State as required to exempt it under subsection (b), supra. We think the General Assembly intended to exempt operations even in interstate commerce, provided the major part of the carrier's system is located within a municipality in this State and the operations do not extend beyond the limits of suburban territory as defined by the Act; furthermore, we think the intention was that "suburban territory" should include territory outside the State as well as within the State. Of course, we realize that Missouri cannot grant permission for operations outside the State in the sense that such permission will be binding on another state, but Missouri *can refuse to charge a tax* for the use of our own highways although the carrier operates within a limited sphere outside the State, provided the carrier otherwise comes within the exemption proviso. Any other construction would discriminate against the many border cities and in favor of the interior cities of our State. The natural trade territory of many of our border cities extends across the State line and the practical necessities of commerce demand a unified system for the transportation of both passengers

and freight in such territory. Nor do we think that to construe the term "suburban territory" so as to include territory outside the State would be unconstitutional, although it would exempt some interstate operators and tax others. The Act has nothing to do with the residence of the owners of transportation systems; it treats resident and non-resident owners exactly alike. It does make a distinction based upon the location of the major portion of the system. We think such distinction is reasonable. If the major part of the system is located in a municipality in this State, such municipality may provide reasonable measures for the dimensions, weight and safety equipment of the vehicles, the qualifications of the operators and the financial responsibility of the owners. If the system is located outside the State, but uses our roads or streets for commercial purposes, it comes within the jurisdiction of our Public Service Commission and subject to the regulations and tax provided for all who do business in the same way.

Many of the questions raised here were discussed and decided in the case of Continental Baking Co. v. Woodring, 55 Fed. (2d) 347, affirmed on appeal in an opinion by Chief Justice HUGHES reported in 286 U. S. 352. A Kansas statute places commercial motor vehicles under the supervision of a public service commission and contains many provisions similar to those in our Bus and Truck Act. The Kansas Act exempts carriers operating wholly within any city or village of the State or within a radius of twenty-five miles beyond such corporate limits. The plaintiff was a carrier located in Kansas City, Missouri. The exemption feature was construed as confined to carriers having an established place of business or base of operations within a city or village of Kansas and the law was upheld as against objections as to unreasonable discrimination and violation of the equal protection clause of the Federal Constitution.

We hold that the exemption provision contained in Section 5264, supra, exempts from the Act commercial motor vehicles operating wholly within a municipal corporation in this State, or wholly within such municipal corporation and its adjacent suburban territory (as defined), whether such suburban territory is located within or without the State, where, in either case, the major part of such transportation system is within the limits of such municipal corporation.

■ Did the circuit court exceed its jurisdiction by the terms of the temporary injunction?.

By the temporary injunction the relators are restrained from arresting or causing the arrest of the carriers or their employees, and from interfering with the vehicles or business of the carriers, "based upon the premise that the plaintiffs, while operating their several local cartage, drayage or hauling businesses confined to the City of St. Louis, and its suburban territory as defined by law, and that portion of the State of Illinois, contiguous to said City of St. Louis, and located within a radius from said City of St. Louis of one mile for

each 50,000 population of said city, without a certificate, permit or authority from the Public Service Commission, are operating in violation of law and are liable to the penal provisions of said Bus and Truck Act, of 1931, as amended.''

It is apparent that relators have not been restrained from doing anything which they are authorized to do under a proper construction of the Act. If they have reasonable grounds, they may cite or arrest any of the carriers on a charge that he is operating outside suburban territory, or that the major portion of his transportation system is not located within a municipal corporation of this State, or act in any other way authorized by the law. The relators are restrained only from interfering with the vehicles or business of the carriers on charges based upon an erroneous construction of the Act.

Relators argue that the circuit court, in order to try the case pending before it, will have to decide whether each of the plaintiffs is a common carrier or contract hauler, or is operating beyond the limits of ''suburban territory'' or in interstate commerce; that such questions are within the exclusive original jurisdiction of the Commission, and the decision of the circuit court would not bind the Commission and would result in conflict and confusion.

As already indicated, we think relators misconceive the object of the suit in the circuit court. That object is to construe the Act and determine whether the operations described in the petition come within it and within the jurisdiction of the Commission. The carriers contend that such operations are exempted by the Act itself, if properly construed, and that any other construction would violate their constitutional rights. Of course, they could set up such claims in defense to criminal prosecutions, but then the matter of frequent arrest and irreparable injury enter in. They could make the same defense if cited before the Commission, but could not consistently bring their cases before the Commission and at the same time claim that the Commission has no jurisdiction. The relators argue that it is the province of the Commission, in the first instance, to decide the question of jurisdiction, subject to court review in the statutory manner. Section 5230, Revised Statutes 1929 (Mo. Stat. Ann., sec. 5230, p. 6656), gives the Commission the right to initiate proceedings for the violation of a statute or an order of the Commission. In any circumstance where a statute is reasonably open to construction, we think the Commission does have the power, in the first instance, to determine administratively its own jurisdiction. But the Commission has had no hearing and made no record which can be reviewed.

All in all, it seems that the problem is one which the carriers, if in good faith and with ''clean hands,'' may bring before a court of the proper venue. In saying this we do not wish to pave the way for frequent suits of this nature. The jurisdiction vested in the Commission is exclusive in the first instance; and claims that particular

operations of motor vehicles are legally exempt from such jurisdiction must be based upon substantial grounds.

From the return of the respondent, admitted by relator's reply, it appears that the construction we here announce is the same as that placed upon the Act by the present and former Commissions and other officials from 1931 until recently. If this construction is unsatisfactory to the public, it should be changed by the General Assembly soon to be in session, and not by either the Commission or the court.

Our provisional writ of prohibition is hereby quashed. All concur.