STATE of Missouri ex rel. **TOEDEBUSCH TRANSFER, INC.**, et al., and Inter-venor-Relators, Relators,

v.

**PUBLIC SERVICE COMMISSION** of Missouri et al., and Intervenor-Re-spondents, Respondents.

**No. 58674.**

Supreme Court of Missouri,
En Banc.

Feb. 10, 1975.

Rehearing Denied March 10, 1975.

Herman W. Huber, Thomas J. Downey, Jefferson City, for relators.

Wentworth E. Griffin, Frank W. Taylor, Jr., William P. Whitaker, Reeder, Dysart & Taylor, Kansas City, for named intervenors-relators.

Kretsinger & Sapp, Tom B. Kretsinger, Warren H. Sapp, Kansas City, for intervenors-relators: Bethany Express, Inc., W. G. Carter, d/b/a W. G. Carter Truck Service, Philipp Transfer Lines, Inc., Philipp Transit Lines, Inc. and Richmond Transfer, Inc.

Harry Wiggins, Gen. Counsel, Michael K. McCabe, First Asst. Gen. Counsel, Michael F. Pfaff, Asst. Gen. Counsel, Jefferson City, for respondent, Missouri Public Service Commission.

Lashly, Caruthers, Thies, Rava & Hamel, Michael C. Walther, Albert J. Stephan, Jr.,

St. Louis, attorneys for intervenors-respondents Marvin E. Van Noy, d/b/a Flat River-Farmington Express, James L. Charlton, d/b/a DeSoto Express, Red Line Express, Inc., and Herbert J. McClary, d/b/a H & M Pony Express.

Lilley & Cowan, William J. Roberts, Gary A. Love, Springfield, for intervenors-respondents William W. Parnell, Jr. et al.

HENLEY, Judge.

This is an original proceeding in prohibition commenced in the court of appeals, Kansas City district, in which relators and intervenor-relators (hereinafter referred to collectively as Relators) seek to prohibit respondent Public Service Commission of Missouri (hereinafter referred to as Commission to distinguish this respondent from the intervenor-respondents) from taking any action (1) to authorize certain motor carriers who had operated freight-carrying vehicles registered and licensed for a gross weight of 6000 pounds or less to operate vehicles licensed for a gross weight of 9000 pounds or less; (2) to issue certificates of convenience and necessity to said motor carriers upon their application without proof that public convenience and necessity would be served thereby. Some of the carriers operating vehicles licensed for a gross weight of 6000 pounds or less intervened as repondents and will be referred to as the Respondents. The court of appeals made its provisional rule, theretofore issued, absolute in a decision from which two of the five judges sitting dissented and certified that they deemed the majority opinion to be contrary to previous decisions of this court and the court of appeals. Accordingly, the case was transferred to this court[1] and we decide it as though it had originated here. State ex rel. Schneider's Credit Jewelers, Inc. v. Brackman, Judge, 272 S.W.2d 289 (Mo.

banc 1954). We discharge the provisional rule.

Relators' contentions are, in general, that the Commission does not have jurisdiction to authorize Respondents to operate vehicles licensed for a gross weight of 9000 pounds or less or to issue certificates of public convenience and necessity to them under authority of § 390.030,[2] as amended, because (1) there is no statutory authority for the licensing of vehicles of that specific weight; and (2) § 390.030 is invalid for the reasons (a) the procedure by which it was adopted violated provisions of the Missouri constitution, and (b) if legally adopted, its provisions are repugnant to Chapter 390, and violate due process, equal protection and other guarantees of the state and federal constitutions. The Commission and the Respondents contend that the Commission has jurisdiction and that prohibition will not lie.

Relators are common carriers engaged in the transportation by motor vehicle of property or passengers for hire upon the public highways of this state under authority of certificates of public convenience and necessity issued by the Commission.

As previously indicated, Respondents are carriers of freight for hire in limited areas of the state who (1) on January 1, 1971, and prior thereto, operated motor vehicles licensed for a gross weight of 6000 pounds or less[3] and were exempt under authority of § 390.030(8) from regulation by, and did not have certificates of convenience and necessity from, the Commission; and who, (2) after an amendment of § 390.030[4] by the general assembly effective September 28, 1971, applied for certificates of public convenience and necessity authorizing the operation of vehicles licensed for a gross weight of 9000 pounds or less and, with the permission of the Commission, operated vehicles licensed for that gross

---

1. Mo.Const. Art. V, § 10, V.A.M.S.

2. References to sections or chapters of the statutes are to RSMo 1969, V.A.M.S., unless otherwise indicated.

3. Commonly referred to as "pony express" operators.

4. Senate Bill 253, Seventy-sixth General Assembly (1971).

weight while their applications for certification were pending.

Chapter 390 provides for the regulation of motor carriers and vests certain powers and authority with respect thereto in the Commission. Section 390.030 provides for the exemption of certain vehicles from the provisions of that chapter. As indicated, the general assembly amended § 390.030 in 1971. The amendment created two subsections. Subsection 1 now embodies all of what were formerly subdivisions (1) through (12), with the exception of the last clause of subdivision (8), relative to vehicles of driveaway operators. This clause was carried over into subsection 2[5] of amended § 390.030 and to it there was added: "vehicles licensed in conformity with the provisions of Chapter 301, RSMo. for a gross weight of nine thousand pounds or less * * *", with a proviso authorizing the issuance of certificates of convenience and necessity for the latter vehicles under specified conditions.

Chapter 301, referred to in § 390.030, provides for the registration and licensing of motor vehicles. Section 301.057[6] provides for the payment of an annual registration fee for property-carrying commercial motor vehicles based on gross weight. The first three of the thirteen graduated weight categories (running from "6,000 pounds and under" to "over 72,000 pounds") and the license fee charged for each weight are as follows:

```
"6,000 pounds and under ..........  $20.50
 6.001 pounds to 12,000 pounds .....   30.50
 12,001 pounds to 18,000 pounds ....   50.50."
```

We note that there is no separate gross weight category and corresponding license fee specified in § 301.057 for vehicles of a gross weight of 9000 pounds or less. Several bills were introduced in the first and second regular sessions of the Seventy-sixth General Assembly to amend both §§ 301.057 and 301.058 so that they would provide a 9000 pound gross weight category and license fee but all failed of passage. We also note, however, that by an amendment of § 301.030,[7] the director of revenue was authorized to "* * * issue registration and license plates for a nine thousand (9,000) pounds gross weight for property carrying commercial motor vehicles * * *, upon payment of the fees prescribed for twelve thousand (12,000) pounds gross weight as provided in * * * section 301.057."

In November, 1971, the chief enforcement officer of the Commission issued a memorandum to its inspectors regarding the 1971 amendment of § 390.030 in which it was stated that "* * * until such time as the Legislature establishes a 9,000

5. Subsection 2 of § 390.030, as amended in 1971, is as follows: "Nothing contained in this section shall be deemed to exempt the vehicles of driveaway operators or vehicles licensed in conformity with the provisions of Chapter 301, RSMo. for a gross weight of 9,000 pounds or less; provided, however, if any carrier operated vehicles licensed for a gross weight of 6,000 pounds or less in bona fide for-hire service between certain points or in a particular area on January 1, 1971 and has so operated such vehicles in regular service in such area since that time shall be issued a certificate authorizing such operations of vehicles licensed for a gross weight of 9,000 pounds or less without furnishing additional proof that public convenience and necessity will be served by such operations, and without further proceedings, if application for such certificate is made to the commission as provided in paragraph 2 of section 390.051,

RSMo and within six months after this section shall take effect. Otherwise, the application shall be issued or denied according to the other provisions of said section. Pending the determination of an application by a carrier who has operated vehicles licensed for a gross weight of 6,000 pounds or less in bona fide for-hire service between certain points or in a particular area on January 1, 1971, and has so operated such vehicles in regular service in such areas since that time, the continuance of such operation shall be lawful."

6. Section 301.058, a companion section, applies to property-carrying *local* commercial vehicles with the same graduated weight categories but different license fees.

7. Act 52 of the second regular session of the Seventy-seventh General Assembly effective May 13, 1974, one week after this case was decided in the court of appeals.

lb. license bracket, the pony express operators who apply for a 'grandfather' certificate will be allowed to carry a maximum gross of 9,000 pounds on a 12,000 pound license." Upon receipt of applications for such "grandfather" certificates the Commission's secretary issued letters to each applicant stating that "[u]ntil such a time as a license bracket of '9,000 pounds or less' is established, any such vehicle must be registered in the 6,001 to 12,000 pound bracket in order to be duly licensed under the provisions of Chapter 301 RSMo."

Eighty-one applications for "grandfather" certificates were filed with the Commission within six months after September 28, 1971 (effective date of 1971 amendment of § 390.030). At the end of that time period the Commission published a notice identifying these 81 applicants in which it was stated, in substance, that since no provision was made in the amendment of § 390.030 for a public hearing none would be held, except in instances where there is opposition by an interested party to the issuance of certificates of convenience and necessity to these applicants; that anyone having reason to protest the issuance of such a certificate may do so, stating reasons; and, that if it appeared that reasonable grounds existed for holding a hearing, a date therefor would be set and the interested parties notified.

Sometime before May 1, 1972, Relators filed formal protests to each of the 81 applications and requested that the Commission require strict proof of the applications, and that Relators be afforded the opportunity to appear and cross-examine witnesses of Respondents and present evidence. The grounds for objection were, in substance, that the services being furnished by Relators as Commission-regulated carriers would be adversely affected thereby; that the Commission was without jurisdiction to grant the applications; and that there were constitutional infirmities in the 1971 amendment of § 390.030 and in the

Commission's procedure in connection therewith.

On October 4, 18 and 26, 1972, the Commission, without hearing Relators' protests, issued certificates of convenience and necessity to a total of 51 of these applicants, the first and second group of certificates being effective December 1 and the third group effective December 15, 1972.[8] On November 15, 1972, Relators filed motions to consolidate these 51 cases and to extend the effective dates of all to December 15. These motions were overruled on November 22, 1972, and two days later Relators filed in the court of appeals their petition for the writ of prohibition.

■ We note at the outset that the Commission admitted in its return that, as alleged by Relators, it had exceeded its jurisdiction in issuing letters to Respondents authorizing them to provide service using vehicles licensed for a gross weight of 9000 pounds or less pending determination of their applications for certificates of convenience and necessity, because it had concluded, rightly we might add, that it had no statutory authority to grant such permission during this interim period. We note too, that the Commission canceled those letters of authority immediately after the court of appeals issued its stop order. This forthright admission and action by the Commission is sufficient assurance that, even though we discharge the provisional rule, these interim letters of authority will not be reinstated as to Respondents or other similar applicants and that our provisional rule need not be made absolute as to such letters of authority.

Relators contend that the Commission does not have jurisdiction under § 390.030, subsec. 2, to grant Respondents' applications for certificates, because the statutes do not authorize the licensing of vehicles for a gross weight of 9000 pounds or less. It is true that when these applications were filed there was no separate gross weight

8. Thirty applications are still pending before the Commission.

category or bracket specified in § 301.057 for licensing vehicles for a gross weight of 9000 pounds or less. The Commission and Respondents contend that notwithstanding the absence of a separate gross weight licensing category they could each purchase and pay the larger fee for a license in the "6,001 to 12,000 pound" category and be issued a certificate of convenience and necessity authorizing, and limiting, their operations to a gross weight of 9000 pounds or less. However, we need not consider further the contentions of the parties on this point, because the General Assembly has, since the commencement of this action, amended § 301.030 [9] so as to authorize (in subsection 4) the registration and licensing of property carrying commercial motor vehicles for a gross weight of 9000 pounds. Resolution of the question presented by this point could not have any practical effect upon the ultimate question of whether the Commission has jurisdiction to issue certificates of convenience and necessity to Respondents; the question is now moot. Gershman Investment Corporation v. Danforth, 475 S.W.2d 36, 38 (Mo. banc 1971) and authorities cited therein.

Relators' attack upon the procedure by which § 390.030 was amended in 1971 is, specifically, (1) that the subject of Senate Bill 253, and especially paragraph 9 thereof (now subsection 2 of § 390.030), was not clearly expressed in its title, as required by Mo.Const. Art. III, § 23; and (2) that the Bill was amended in its passage through the General Assembly so as to change its original purpose, thus violating Mo.Const. Art. III, § 21.

The title of Senate Bill 253 was as follows:

"An act to repeal Section 390.030, RSMo 1969, relating to certain motor vehicles regulated by the public service commission, and to enact in lieu thereof one new section relating to the same subject."

Relators argue that the subject of the Bill was "* * * the *exemption* of motor vehicles from the provision of Chapter 390," and, that "* * * as introduced, [it] did relate solely to the subject as expressed in the title." But, they say, it "* * * was amended to include an entirely new subject, the establishment of a new class of motor carriers and provisions for the granting of certificates of convenience and necessity to such motor carriers * * *, a subject not clearly expressed in the title."

As originally introduced, Senate Bill 253 would have (1) increased the gross weight authorized for pony express operators from 6000 to 9000 pounds; and (2) added vehicles used exclusively to transport "logs, stave bolts, cordwood, untreated posts or any other raw timber product from the location where it is first cut to any other place for further treatment, etc." to those already exempt from regulation by the Commission. In the course of the Bill's passage through the General Assembly, the addition to the exemption from regulation of the vehicles described in (2) immediately above, was eliminated, and the gross weight authorization for pony express operators was not increased but was kept at 6000 pounds. Instead of increasing the gross weight authorization of these operators, the Bill, as finally passed, made only one significant change in § 390.030: it added to the vehicles and operators which would be *regulated* by the Commission those pony express operators who elected to make application for certificates of convenience and necessity and who met certain qualifications and requirements.

One of the purposes of the constitutional requirement that no Bill contain more than one subject clearly expressed in its title was stated recently in 508 Chestnut, Inc. v. City of St. Louis, 389 S.W.2d 823 (Mo. 1965) at 828–829:

"The object of the requirement is that 'the title, like a guideboard, indicate the

9. See footnote 7, supra.

general contents of the bill, and contain but one general subject, which might be expressed in a few or a greater number of words.' State ex rel. Normandy School District of St. Louis County v. Small, Mo. Sup., en banc, 356 S.W.2d 864, 868–869. The evil to be avoided is imposition upon the members of the legislature and interested people. By requiring an 'honest' title —one which is not designed as a cover— the legislators will not be misled into overlooking or carelessly or unintentionally voting for vicious and incongruous legislation, and interested people will be notified of the subjects of legislation being considered in order to have an opportunity to be heard thereon. State ex rel. Normandy School District of St. Louis County v. Small, supra, and cases cited 356 S.W.2d 1.c. 869. If the bill contains an exception the exception must be expressed in the title, else the section dealing with the subject matter of the exception is void. State, on Inf. of Taylor v. Currency Services, 358 Mo. 983, 218 S.W.2d 600, 604; Petitt v. Field, Mo.Sup., 341 S.W.2d 106, 110. The title may be expressed in a few words, but where it descends to particulars the particulars stated become the subject of the act, which must conform to the title as expressed by the particulars. 'Where the title goes into such detail as would reasonably lead to the belief that nothing was included except that which is specified then any matter not specified is not within the title. Any such matter beyond the title is void * * *.' State ex rel. Fire Dist. of Lemay v. Smith, 353 Mo. 807, 184 S.W. 2d 593, 596." See also State v. Ludwig, 322 S.W.2d 841, 846 [2] (Mo. banc 1959).

■ We do not agree that the subject of the Bill was the *exemption* of motor vehicles from the provisions of Chapter 390. Nor do we agree that the amendments to the Bill created a new subject not clearly expressed in its title. The Bill, as introduced and as amended, had one object and dealt with one subject, fairly indicated and clearly expressed in its title in general

terms: " * * * certain motor vehicles regulated by the public service commission * * *." As adopted, it did not create a new class of motor carriers to be regulated by the Commission, because motor carriers operating vehicles licensed for a gross weight in excess of 6000 pounds were, before adoption of the amendment, subject to the jurisdiction of and were regulated by the Commission.

What we have said regarding the contention that § 390.030, as amended, is void, because the subject of the Bill amending it was not clearly expressed in the title may be sufficient to dispose of the contention that the section is unconstitutional because the Bill was so amended during passage as to change its original purpose. In State v. Ludwig, supra, the court said at 847:

"This constitutional limitation, as with the limitation to one subject, is designed to prevent ' "the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws." ' 1 Cooley, Constitutional Limitations, p. 314. 'Purpose' is the key word in the provision and 'means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated.' State ex rel. McCaffery v. Mason, 155 Mo. 486, 502–503, 55 S.W. 636, 640. Again, the restriction is against the introduction of matter 'not germane to the object of legislation or unrelated to its original subject,' alterations which bring about an extension or limitation of the scope of a bill are not prohibited, even new matter is not excluded, if germane. Annotation 15 A.L.R. 421, 422, 426. As previously indicated, the amendments here were germane to the subject and object of the proposed legislation, 'Collectors And The Collection of Taxes,' and did not so change the original purpose of the bill as to render the act unconstitutional. Com-

pare: Allied Mutual Ins. Co. v. Bell, 353 Mo. 891, 185 S.W.2d 4, 158 A.L.R. 415."

The amendments to Senate Bill 253 were germane to the subject and object of the proposed legislation, "certain motor vehicles regulated by the public service commission," and did not so change the original purpose thereof as to render the act unconstitutional. Cf.: Allied Mutual Ins. Co. v. Bell, 353 Mo. 891, 185 S.W.2d 4 [2] (1945); Annotation: 158 A.L.R. 421.

Three points briefed by Relators are so interrelated and closely allied that what is said about one point will apply to all or parts of each of the others; hence, we state and discuss the points together. These parties contend that subsection 2 of § 390.030 (quoted in footnote 5) is (1) a special law prohibited by Mo.Const. Art. III, § 40, paragraphs (4), (28) and (30); (2) that it denies them and others equal protection of the laws and due process of law in violation of Mo.Const. Art. I, § 10 and the Fourteenth Amendment to the Constitution of the United States; and (3) that it does not provide standards or guidelines for application by the Commission to the class of motor carrier this section creates and is, therefore, so repugnant to Chapter 390, vague and unenforceable as to be invalid.

The background and purpose of Chapter 390, the Missouri Bus and Truck Law, is significant. Prior to 1931 and the enactment of what is now Chapter 390, there was no state regulation of the intrastate operation of freight-carrying motor vehicles for hire except a requirement that a license be purchased.

Without the provisions of Chapter 390, anyone would have the right to operate freight-carrying motor vehicles for hire in any manner he saw fit, with any motor vehicle and over any route or territory within this state he desired. In fact, this was the case before the enactment of what is now Chapter 390.

Relators are the beneficiaries of this legislation enacted in the public interest, and their authority to operate as common carriers was granted by the Public Service Commission pursuant to Chapter 390.

■ It has long been settled that the state may regulate the use of its highways through its police power. Citing and relying upon the reasoning of Schwartzman Service, Inc. v. Stahl, et al., 60 F.2d 1034 (W.D.Mo.1932) and authorities therein referred to, this court, en banc, said in Park Transp. Co. v. Missouri State Highway Commission, 332 Mo. 592, 60 S.W.2d 388 (1933) at 390:

"The state has the right to regulate and control the movements of motor vehicles over its highways, and may exercise it in the interest of public convenience and safety and for the protection of the highways. Provisions of this character have been uniformly sustained. Buck v. Kuykendall, 267 U.S. 307, loc. cit. 314, 45 S.Ct. 324, 69 L. Ed. 623, 38 A.L.R. 286; Stephenson v. Binford et al. (D.C.Tex.) 53 F.2d 509; Kane v. State of New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222. Though a citizen may have, under the Fourteenth Amendment, the right to transport his property upon them by motor vehicles, yet he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion without violating the due process clause or the equal protection clause. Packard v. Banton, 264 U.S. loc. cit. [140] 144, 44 S.Ct. 257, 68 L.Ed. 596. There is a constant recognition of the principle that under this power the state 'has a broad discretion in classification in the exercise of its power of regulation.' Smith v. Cahoon, 283 U.S. 553, loc. cit. 560, 51 S.Ct. 582, 587, 75 L.Ed. 1264. Upon such classification no person can interpose an objection, save only in those cases where the classification or discrimination is entirely arbitrary, and the burden

is on the assailant to show that the classification is essentially arbitrary."

The first section (390.011) of Chapter 390 states the purpose of the Bus and Truck Law, and how it shall be construed, in these words:

"It is hereby declared that the legislation contained in sections 390.011 to 390.176 is enacted for the sole purpose of promoting and conserving the interests and convenience of the public, and that no right, privilege, or permit granted or obtained under or by virtue of sections 390.011 to 390.176 shall ever be construed as a vested right, privilege, or permit; and the general assembly retains full legislative power over, concerning and pertaining to the subject or subjects legislated upon in sections 390.011 to 390.176 and the power and right to alter, amend or repeal sections 390.011 to 390.176 at its pleasure."

In Schwartzman Service, Inc. v. Stahl, et al., supra, the court said, 60 F.2d at 1037:

"Every presumption must be indulged in favor of the constitutionality of the law. While validity of a statute cannot stand upon legislative declaration alone, yet the rule is that 'the legislative declaration of purpose and policy is entitled to gravest consideration, and, unless clearly overthrown by facts of record, must prevail.' Foster Packing Co. v. Haydel, 278 U.S. 1, 49 S.Ct. 1, 73 L.Ed. 147; Stephenson v. Binford (D.C.Tex.) 53 F.2d 509, loc. cit. 514.

"The rule was well stated in Continental Baking Co. v. Woodring (D.C.Kan.) 55 F.2d 347, loc. cit. 353, wherein Judge McDermott of the Tenth Circuit said: 'When the Legislature acts within the scope of its legislative power, when no facts are disclosed as to the reasons which actuated the legislation, the presumption of constitutionality stands, unless no fair reason can be ascribed for the legislative action. Hardware Dealers' Ins. Co. v. Glidden [284 U.S. 151], 52 S.Ct. 69, 76 L.Ed. 214; O'Gorman v. Hart-ford Ins. Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324; Standard Oil Co. v. Marysville, 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856. That a legislative classification should stand, "if any state of facts reasonably can be conceived that would sustain it"; that the burden is on the assailant to show that the classification is "essentially arbitrary." ' " See also: State v. Cushman, 451 S.W.2d 17, 19 [3] (Mo.1970); and State ex inf. Barrett ex rel. Bradshaw v. Hedrick, 294 Mo. 21, 241 S.W. 402, 419–420 [14–19] (Mo. banc 1922) where the court said: "[t]he * * * invalidity of such a law [a statute affecting a single class] must appear beyond a reasonable doubt before we can assume to pronounce it void."

■ It is clear from the foregoing cases and statute that the regulation of intrastate commercial motor transportation by the state through its police and regulatory power is purely a legislative question.

■ Classification is an inescapable part of this regulatory power, and the reasonable classification of persons or things for the various purposes of legislation is also a legislative matter. St. Louis Union Trust Co. v. State, 348 Mo. 725, 155 S.W.2d 107, 112 [3–6] (1941).

■ The only requirements the equal protection clause of the Fourteenth Amendment to the United States Constitution and Mo.Const. Art. III, § 40(4), (28), (30) prescribe is that such classification be based upon a reasonable ground (not arbitrary), and that the law operate equally upon all in the same class. Park Transportation Co. v. Missouri State Highway Commission, supra; St. Louis Union Trust Co. v. State, supra; State v. Cushman, supra.

■ A classification basing a license upon prior experience is a matter primarily for legislative determination, McClellan v. Kansas City, 379 S.W.2d 500, 506 [12] (Mo. banc 1964), and the same reasoning applies to classification for issuance of certificates of convenience and necessity.

By relieving those carriers who, on January 1, 1971, had operated vehicles licensed for a gross weight of 6000 pounds or less in bona fide for-hire service between certain points or in a particular area, and who had operated since that date, from furnishing additional proof that public convenience and necessity would be served, the General Assembly properly recognized their prior service and experience and their ability to serve the public need.

■ It is obvious that the General Assembly determined that the public benefit from such service would be enhanced if these carriers were authorized to operate up to a gross weight of 9000 pounds and be under the supervision and regulation of the Commission.

Relators contend that this section is arbitrary, capricious and without reasonable basis, because (1) the General Assembly retained the previous 6000 pound exemption for pony express operators, and (2) there is "no relationship between the operation of an exempt service using vehicles with a gross weight of 6,000 pounds or less and the granting of a certificate for a regulated service using vehicles licensed for a gross weight of 9,000 pounds or less."

■ As stated, the burden is upon Relators to show that the new statutory classification is arbitrary and without a reasonable basis. They have failed to do so. The recognition that some of these exempted carriers might not desire increased operating authority or regulation by the Commission made retention of the 6000 pound exemption mandatory for their continued operation. Also, the recognition of the prior service, experience and ability of these exempted carriers, and the public benefit to be served by their regulation and by an expansion of their service cannot reasonably be said to be arbitrary or unreasonable.

Within the class of carriers created by the amendment of § 390.030, there are only two divisions: (1) those carriers who applied for a certificate of convenience and necessity; and (2) those who chose not to apply. If a carrier did not apply for the authorized certificate, that was his decision, but the application of this law was uniform upon the entire class and excluded none.

Relators' bare assertion and conclusion that their property interests will be adversely affected by the granting of certificates of convenience and necessity to persons in the class created by subsection 2 of § 390.030 does not prove itself; hence, insofar as the due process question is to be decided on the basis of an assertion not supported by facts, the court is asked to decide a constitutional question in a vacuum. We decline to do so.

■ Relators also present the due process question on another basis, i.e., that subsection 2 of § 390.030 violates the due process clause and is void on its face, because it does not provide for a hearing and determination by the Commission whether certificates should be issued to the class of persons the statute creates. Relators contend, in effect, that they have been discriminated against by the statute's failure to require such a hearing at which they, as certificated carriers with valuable property rights, could be heard to show " * * * the adverse effect which the proposed [new] service may have on common carriers performing a like service * * *," because other provisions of Chapter 390, under which they (Relators) were certificated and operate, provide for such hearings. This presentation and argument of the due process question is akin to their "equal protection" and "special law" contentions. The General Assembly, acting within the scope of power expressly retained by § 390.011, is presumed to have enacted subsection 2 of § 390.030 for the sole purpose of promoting and conserving the interest and convenience of the public, including Relators and those they are authorized to serve as common carriers. No facts are disclosed as to reasons for the enactment of subsection 2 which even sug-

gest this presumption reasonably could be rebutted. This amendment obviously represents a legislative determination and declaration that the interest and convenience of the public would be promoted by the supervision and regulation of these pony express operators by the Commission under certificates authorizing their operation of vehicles licensed for the gross weight of 9000 pounds or less. Implicit in that determination is the conclusion that a hearing like that provided for in § 390.051 is not required. This legislative declaration must prevail, absent facts clearly refuting it, and in these circumstances subsection 2 does not unconstitutionally deprive Relators of due process of law.

■ Section 390.030, subsection 2 is not a "special law" prohibited by Mo. Const. Art. III, § 40. Nor does it violate the equal protection or due process clauses of the Fourteenth Amendment to the United States Constitution or Mo.Const. Art. I, § 10. Marshall v. Kansas City, 355 S.W.2d 877, 884 (Mo.1962); State v. Cushman, supra; St. Louis Union Trust Co. v. State, supra.

■ As Relators contend, § 390.030, subsection 2, does not provide standards or guidelines for the Commission to apply regarding these carriers which would be certificated to operate vehicles licensed for a gross weight of 9000 pounds or less, but that does not make the section as amended repugnant to Chapter 390 or so vague and unenforceable as to be invalid. The so-called standards and guidelines which will govern the Commission and these carriers, · after certificates of convenience and necessity have been issued as authorized by this

section, are those provided or authorized by the Missouri Bus and Truck Law, the same standards or guidelines applicable to all other carriers which are subject to the supervision and regulation of the Commission.

The main question which prompted the dissent in the court of appeals and caused the transfer is whether prohibition will lie against the Public Service Commission, a question discussed at length in ten of the twelve briefs filed. The two dissenting judges of the court of appeals were of the opinion, and certified, that the decision of the majority conflicted with decisions[10] of this court and other districts of the court of appeals which held that exclusive, original jurisdiction of all subject matter included in the Public Service Commission Law (Chapter 386) and the Missouri Bus and Truck Law (Chapter 390) is vested in the Commission, that § 386.510[11] excludes any power of the courts to enjoin, restrain or interfere with the Commission except by writ of review or appeal as provided in that section, and that § 386.510 provides an adequate and expeditious method of review. Hence, they say, prohibition will not lie.

State ex rel. Public Service Commission, et al. v. Blair, supra (146 S.W.2d 865 (Mo. banc 1940)), was an original proceeding commenced in this court to prohibit the respondent from proceeding further in an action brought by fifty-eight plaintiffs (truckers whose business was confined to the city of St. Louis and environs) against the Commission and others, in the circuit court seeking both a judgment declaring that the Bus and Truck Law did not apply

10. State ex rel. and to Use of Cirese v. Ridge, 345 Mo. 1096, 138 S.W.2d 1012 (Mo. banc 1940); Speas v. Kansas City, 329 Mo. 184, 44 S.W.2d 108 (1931); State on inf. Barker ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, 163 S.W. 854 (banc 1914); State ex rel. Public Service Comm'n. v. Mulloy, 333 Mo. 282, 62 S.W.2d 730 (banc 1933), and other cases cited at p. 869 of State ex rel. Public Service Comm'n. v. Blair, 347 Mo. 220, 146 S.W.2d 865 (Mo. banc 1940).

11. "No court in this state, except the circuit courts to the extent herein specified and the supreme court or the various courts of appeals on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties."

to them and an injunction restraining the Commission and others from arresting them for violation of that law and from interfering with their businesses. The object of the suit pending in the circuit court was, as stated by this court at 874, to secure a construction of the Bus and Truck Law and a determination of whether the operations of the plaintiffs came within that Law and within the jurisdiction of the Commission. The court said this presented a question which the plaintiff-truckers may bring to a court for determination, especially where " * * * the Commission has had no hearing and made no record which can be reviewed." Accordingly, this court quashed its provisional rule, but in doing so emphasized that it continued to adhere to its prior rulings that " * * * the power rests in the Public Service Commission, in the first instance, to decide all matters placed within the Commission's jurisdiction by the Bus and Truck Act: that no court can enjoin the Commission *in the performance of its duties,* nor alter its decisions except in review in the manner provided in the Act; and that any decision otherwise rendered by a court would not be binding on the Commission."

No question was raised in the Blair case and none is presented in this case as to whether the exclusionary provision of § 386.510 for review of the action of the Commission violates Mo.Const. Art. V, § 4, and we express no opinion thereon.

The Blair case, supra, reviews many of the cases referred to in footnote 10 and it is unnecessary that we review them again here. They hold, in general, that " * * * the authority of the Commission is referable to the police power of the State which power may never be abridged." 146 S.W. 2d at 868. The result reached in that case is some authority for the position that the exclusionary provisions of § 386.510 quoted in footnote 11 is not an *absolute* exclusion of the jurisdiction of the courts.

This proceeding in prohibition, like the action pending in the circuit court in the Blair case, seeks a construction of § 390.030 and a determination of whether the respondents may, by their mere applications, secure certificates of public convenience and necessity from the Commission. Thus a question is presented which these relators, as established certificated motor carriers, may bring to a court for determination, especially in the circumstances of this case.

As previously noted, Relators filed verified formal protests to these 81 applications for certificates and requested hearings thereon, but certificates were granted in 51 cases without a hearing or any notice from the Commission. Relators immediately thereafter filed motions to consolidate the cases and for reconsideration of the orders granting these certificates, but the motions were overruled.

The expense of appealing 51 cases, instead of one consolidated case, as well as the impact of this number of appeals upon the docket of the court to which appeal is directed and their impact and effect upon other litigants in that court who would be delayed because of high priority these 51 cases would have to be given (§§ 386.530 and 386.540) leads to the conclusion that appeal is not an adequate remedy in this case and presents extraordinary circumstances calling for like measures. However, we repeat as a caveat what the court said in the Blair case (146 S.W.2d at 874): "In saying this we do not wish to pave the way for frequent suits of this nature."

Relators have been afforded a construction of the 1971 amendment of § 390.030 and a determination of their many-pronged attack upon the jurisdiction and authority of the Commission under that section, but in doing so we have concluded, for the reasons stated, that the provisional rule must be discharged.

Accordingly, the provisional rule in prohibition is discharged.

All concur.